Melba J. BURRELL, Plaintiff–Appellee,

v.

The BOARD OF TRUSTEES OF
GA. MILITARY COLLEGE,
et al., Defendants,

Jacob L. Goldstein, etc., and Alva
L. Baggarly, etc., Defendants–
Appellants.

Melba J. BURRELL, Plaintiff–Appellee,

v.

The BD. OF TRUSTEES OF GA. MILI-
TARY COLLEGE, Alva L. Baggarly,
Individually & in his official capacity
as Chief Exec. Officer of First Fed. Sav.
& Loan Assn. of Milledgeville, the May-
or and Aldermen of the City of Mil-
ledgeville and Unknown Co–Conspira-
tors, Defendants,

James E. Baugh, Indiv. & in his official
capacities as Mayor of the City of Mil-
ledgeville, Ga. & Chairman of the Bd.
of Tr. of Ga. Military College, Jacob L.
Goldstein, Indiv. & in his official ca-
pacities as a member of the Bd. of Dir.
of First Fed. Sav. & Loan Assn. of
Milledgeville & as a member of the Bd.
of Tr. of Ga. Military College, Defen-
dants–Appellants.

Melba J. BURRELL, Plaintiff–Appellee,

v.

The BOARD OF TRUSTEES OF GA.
MILITARY COLLEGE, James E.
Baugh, Chairman of the Board of
Trustees of Ga. Military College, Jacob
L. Goldstein, as a member of the Board
of Trustees of Ga. Military College, and
the Mayor and Aldermen of the City of
Milledgeville, Defendants–Appellants,

Alva L. Baggarly, etc., et al., Defendants.

Nos. 90–8540, 90–8760 and 90–8930.

United States Court of Appeals,
Eleventh Circuit.

Sept. 2, 1992.

Rehearing and Rehearing En Banc Denied
Oct. 29, 1992.

Craig N. Cowart, Carr G. Dodson, Jones, Cork and Miller, Macon, Ga., for Jacob L. Goldstein and Alva L. Baggarly.

Christopher Coates, Milledgeville, Ga., for Melba J. Burrell.

Charles A. Mathis, Jr., D. James Jordan, Mathis, Sands, Jordan and Adams, P.C., Milledgeville, Ga., for James E. Baugh et al.

Carr G. Dodson, Craig N. Cowart, Macon, Ga., Harold S. Lewis, Jr., Fordham University School of Law, New York City, for amicus-First Federal, Goldstein and Baggarly.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.

TJOFLAT, Chief Judge:

This opinion consolidates three appeals, Nos. 90–8540, 90–8760, and 90–8930, from an order of the United States District Court for the Middle District of Georgia denying motions for summary judgment on the ground of qualified immunity. Melba J. Burrell (Burrell) has brought an action in the United States District Court for the Middle District of Georgia against James E. Baugh, mayor of Milledgeville, Georgia, and chairman of the board of trustees of Georgia Military College (GMC); Jacob L. Goldstein, a member of the board of directors of First Federal Savings and Loan Association of Milledgeville (First Federal) and of GMC's board of trustees;[1] Alva L. Baggarly, First Federal's chief executive officer and president, and a member of First Federal's board of directors; GMC's board of trustees; the Mayor and Aldermen of the City of Milledgeville; and unknown co-conspirators, alleging that she was fired from her job as First Federal's senior vice president in violation of 42 U.S.C. §§ 1983[2] and 1985(3)[3]

---

1. Burrell sues Baugh and Goldstein in their individual and official capacities.

2. Section 1983 provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
   42 U.S.C. § 1983 (1988).

3. Section 1985(3) provides in relevant part:
   If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State ... from giving or securing to all persons within such

(1988).[4] Specifically, Burrell alleges the following conspiracy in her complaint: "Baugh, Goldstein, Baggarly, and unknown co-conspirators ... reached an agreement and entered into a conspiracy, the object of which was to discharge [Burrell] from her employment with ... First Federal in retaliation for her and her husband's public criticism of ... GMC." The complaint further asserts that

> [i]n concert[, Baugh, Goldstein, Baggarly, and unknown co-conspirators] participated in certain overt acts in furtherance of said conspiracy, including but not limited to, conversations involving themselves and employees of the City of Milledgeville pertaining to how acts of retaliation might be carried out against [Burrell] and her husband and how [Burrell] could be discharged from her employment with ... First Federal for alleged job-related reasons.

Burrell seeks reinstatement to her position as senior vice president with backpay and compensatory and punitive damages.

Baugh, Goldstein, and Baggarly moved for summary judgment on the ground of qualified immunity.[5] The district court denied their motions, and the three now appeal in Nos. 90–8540 and 90–8760. Baugh and Goldstein also join the Mayor and Aldermen of Milledgeville and GMC's board in their appeal under 28 U.S.C. § 1292(b) (1988) in No. 90–8930.

In appeal No. 90–8540, we reverse the denial of qualified immunity to Baugh and Goldstein as public officials against Burrell's section 1983 claim, and affirm the denial of qualified immunity to Baugh and Goldstein against Burrell's section 1985(3) claim and to all other appellants. In appeal No. 90–8760, we affirm the denial of qualified immunity to all appellants. We dismiss appeal No. 90–8930 for lack of jurisdiction. After disposing of the jurisdictional issues, we will discuss the merits of appeals Nos. 90–8760 and 90–8540 in order.[6]

## I.

### A.

We have jurisdiction to entertain appeals Nos. 90–8540 and 90–8760 under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), which held that a "denial of a claim of qualified immunity, to the extent that it turns on an issue of law," *id.* at 530, 105 S.Ct. at 2817, constitutes an appealable collateral order as defined by *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Even assuming, without deciding, that some facts remain disputed

---

State ... the equal protection of the laws ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States, the party so ... deprived may have an action for the recovery of damages occasioned by such ... deprivation, against any one or more of the conspirators.
42 U.S.C. § 1985(3) (1988).

4. Burrell also brought a Title VII claim against First Federal under 42 U.S.C. §§ 2000e and 2000e–3 (1988), which is not at issue in these appeals.

5. In its order denying all motions for summary judgment on the ground of qualified immunity, the district court determined that Goldstein, as a private defendant in his capacity as member of First Federal's board, and Baggarly "moved for summary judgment on the basis of qualified immunity." As the court remarked in a foot-

note, however, neither Goldstein, as a private defendant, nor Baggarly ever "formally filed" a motion "regarding summary judgment on the ground[ ] of qualified immunity; nor did [they] file any supplementary pleadings [on 'outstanding issues of law dealing with the immunity of some of the defendants'] as directed by the court in its March 14th order [denying summary judgment on other grounds]." The court apparently decided that Goldstein and Baggarly had met their burden of pleading qualified immunity by raising the issue at oral argument on their motion for summary judgment on other grounds. While we reemphasize that qualified immunity will be unavailable to those who do not raise it, *see Moore v. Morgan*, 922 F.2d 1553, 1557 (11th Cir.1991), we will not disturb the district court's determination that Goldstein and Baggarly met their burden of pleading in this case.

6. We emphasize that we express no opinion about the merits of any of Burrell's claims. We merely review the district court's denial of qualified immunity. *See infra* notes 9 and 18.

in this case, the mere existence of a factual quarrel does not affect the appealability of a denial of qualified immunity. *See Howell v. Evans*, 922 F.2d 712, 717–18 (11th Cir.), *vacated as moot*, 931 F.2d 711 (11th Cir. 1991); *see also Bennett v. Parker*, 898 F.2d 1530, 1535–37 (11th Cir.1990) (Tjoflat, C.J., concurring), *cert. denied*, — U.S. —, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991).

■ Appeals Nos. 90–8540 and 90–8760 do not escape our jurisdictional grasp simply because Burrell seeks equitable as well as legal relief. Qualified immunity does not shield against equitable claims. *Marx v. Gumbinner*, 855 F.2d 783, 787 (11th Cir.1988). We recently have held, however, that a denial of qualified immunity remains immediately appealable, even where the government official would have to stand trial on the equitable claims left undisturbed by a grant of qualified immunity as to the legal claims. *Id.* at 786–88. Although *Marx* alone disposes of the jurisdictional question, we point out that Baugh, Goldstein, and Baggarly would not have to face the tribulations of trial on the equitable claims even if they should not be immune from the legal claims. With the possible exception of Baggarly,[7] they could not provide Burrell with the equitable relief she seeks because they would be in no position to reinstate her as senior vice president at First Federal.

Our jurisdiction over appeals Nos. 90–8540 and 90–8760 also remains untainted by our ultimate conclusion that certain defendants were not entitled to raise the qualified immunity defense in the first place. If we have jurisdiction to determine whether a particular defendant generally eligible to raise qualified immunity may benefit from it in the particular case at hand, we surely have jurisdiction to determine whether qualified immunity may shield that defendant as a general matter.

### B.

Appeal No. 90–8930 reaches us from an order entered by the district court pursuant to 28 U.S.C. § 1292(b) (1988). An administrative panel of this court granted GMC's board, Baugh, Goldstein as a member of GMC's board, and the Mayor and Aldermen of Milledgeville leave to appeal pursuant to section 1292(b). We have concluded that their motion for leave to appeal was improvidently granted and vacate the order allowing this appeal to proceed.

Under section 1292(b), a district court may certify for appeal a non-final order if the court finds that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and that resolution of the question "may materially advance the ultimate termination of the litigation."[8] The district court certified the following issue for appeal pursuant to section 1292(b):

After reviewing the briefs submitted by the parties, it appears to the court that a prima facie case of conspiracy to commit unconstitutional acts under 42 U.S.C. §§ 1983 and 1985(3) can be based upon circumstantial evidence. Circumstantial evidence has no less weight than direct evidence as long as it reasonably establishes that fact rather than anything else. The Supreme Court, in *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), thought "it would be open to

---

7. It is not entirely clear from the record whether Baggarly would be authorized to rehire Burrell without obtaining the approval of First Federal's board.

8. 28 U.S.C. § 1292(b) (1988) provides that:
    When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

a jury, in light of the sequence that followed, to infer from the circumstances ..." that the state actor and private party had a "meeting of the minds." The court finds that plaintiff has submitted enough circumstantial evidence regarding the elements necessary for a conspiracy to withstand defendants' motions for summary judgment.

■ This passage identifies one question of law: whether a prima facie case of conspiracy under 42 U.S.C. §§ 1983 and 1985(3) may rely on circumstantial evidence. We fully agree with the district court that this question must be answered in the affirmative. Indeed, our agreement with the district court is so complete and unequivocal that we cannot make out the "substantial ground for difference of opinion" required by section 1292(b). Accordingly, we dismiss appeal No. 90–8930.[9] *Cf. In re Grand Jury Proceedings*, 832 F.2d 554, 557 (11th Cir.1987) (no jurisdiction to entertain section 1292(b) appeal in non-civil action); *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 607 (11th Cir.1985) (leave to appeal

pursuant to section 1292(b) improvidently granted), *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).

Having settled the jurisdictional question, we now address appeals Nos. 90–8760 and 90–8540 in turn.

## II.

Baugh and Goldstein bring appeal No. 90–8760 individually and in their official capacities as mayor of Milledgeville and chairman of GMC's board of trustees, and as a member of GMC's board of trustees, respectively.[10] We reverse the district court's denial of their motion for summary judgment on the ground of qualified immunity as to Burrell's section 1983 claim and affirm it as to Burrell's section 1985(3) claim. We first turn to the section 1983 claim.

### A.

"[G]overnment officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitu-

---

**9.** The parties mistakenly treated the permission to appeal pursuant to the district court's 1292(b) certification as an invitation to challenge the court's denial of summary judgment on grounds other than qualified immunity. In fact, the appellants in No. 90–8930 make no effort to address the purportedly "controlling" legal issue certified by the district court under § 1292(b). Accordingly, they argue that Burrell failed to make out a claim under § 1983 or 1985(3). We have no jurisdiction to consider these arguments. First, we have no jurisdiction to entertain an appeal from a denial of summary judgment on grounds other than qualified immunity. *See Marx v. Gumbinner*, 855 F.2d 783, 791 n. 15 (11th Cir.1988). Second, we have no jurisdiction to consider attacks on a non-final order unrelated to the resolution of the specific legal question identified by the district court in its § 1292(b) order.

**10.** We discuss only whether Baugh or Goldstein were entitled to qualified immunity in their individual capacities. It is clear that neither of them could be qualifiedly immune in their official capacities. "[S]uits against an official in his or her official capacity are suits against the entity the individual represents." *Parker v. Williams*, 862 F.2d 1471, 1476 n. 4 (11th Cir. 1989). We therefore treat Burrell's claims against Baugh and Goldstein in their official

capacities as claims against the City of Milledgeville and GMC. As qualified immunity does not shield municipal entities, Baugh in his official capacity as mayor of Milledgeville is not entitled to qualified immunity. *See Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *see also Tittle v. Jefferson County Comm'n*, 966 F.2d 606, 611 (11th Cir. 1992); *Moore v. Morgan*, 922 F.2d 1553, 1556 (11th Cir.1991). We do not decide whether Baugh or Goldstein are state officials because they serve on the board of GMC, an institution established and funded primarily by the State of Georgia, or municipal officials because they hold their board positions on account of their mayoral office and a direct vote by the city electorate, respectively. *See Robinson v. Georgia Dep't of Transp.*, 966 F.2d 637 (11th Cir. 1992) (outlining and applying test for determining whether an entity is an "arm of the State" for Eleventh Amendment purposes). In the first case, Baugh and Goldstein in their official capacities would be entitled to complete Eleventh Amendment, not qualified, immunity. *See Parker*, 862 F.2d at 1475–76. We could not consider this issue, however, because this appeal lies from a denial of qualified, not Eleventh Amendment, immunity. In the latter case, neither Baugh nor Goldstein would enjoy qualified immunity for the same reasons that deprive Baugh of this type of limited immunity in his official capacity as mayor of Milledgeville.

tional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It is assumed for purposes of this appeal that Baugh and Goldstein [11] are government officials for qualified immunity purposes.[12] Otherwise neither Baugh nor Goldstein could raise qualified immunity.[13] Our review of the district court's denial of qualified immunity therefore scrutinizes the district court's determination that, "consider[ing] in the light most favorable to the plaintiff all facts fairly inferable from the record[,] the inferable facts, if true, constitute a violation of clearly established law by the defendant[s]." *Bennett,* 898 F.2d at 1535 n. 2 (Tjoflat, C.J., concurring); *Greason v. Kemp,* 891 F.2d 829, 831 (11th Cir.1990).

Milledgeville is a town of about 18,000 in the heart of Georgia. Georgia Military College is a military school in Milledgeville which operates a preparatory school with grades six through twelve and a junior college. Although GMC charges some tuition, it is a public institution created by state law and relies heavily on state funds. GMC is run by its board of trustees, which has seven members, one of whom, the chairperson, is the mayor of Milledgeville, while the remaining six are elected by the voting population of Milledgeville. Baugh is the mayor of Milledgeville and the chairperson of GMC's board of trustees. Goldstein is a member of GMC's board.

First Federal is a savings and loan association in Milledgeville. At the time of Burrell's discharge, First Federal's board of directors had eight members, including Goldstein, Baggarly, and Burrell. Baggarly also serves as First Federal's chief executive officer.

Burrell began working at First Federal as a teller in 1972. She worked herself up through the ranks and on January 1, 1986, was promoted to the position of senior vice president. In September of that year she also was appointed to First Federal's board of directors, and between January and July 1987 she served as acting chief executive officer (CEO). Declining the board's invita-

---

11. Goldstein, unlike Baugh, is also a private defendant in his capacity as a member of First Federal's board of directors. *See infra* part III.

12. This assumption, however, should not obscure our serious doubts about the presence of state action under the First and Fourteenth Amendments and action under color of state law for § 1983 purposes, even assuming counterfactually that Burrell had managed to fill the record with inferable facts supporting a finding that Baugh, Goldstein, and Baggarly conspired to have Burrell fired. While absence of state authorization does not dispose of either question, a public official not authorized to engage in the allegedly unconstitutional activity will only act under color of state law if the act was accomplished by " '[m]isuse of power, possessed by virtue of state law and made possible only because the alleged wrongdoer was clothed with the authority of state law.' " *See Brown v. Miller,* 631 F.2d 408, 411 (5th Cir.1980) (citing *Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), *overruled on other grounds by Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Similarly, state action will only be present if "an officer or other representative of a state, in the exercise of the authority with which he is clothed, misuses the power possessed to do a wrong." *Home Tel. & Tel. Co. v. City of Los Angeles,* 227 U.S. 278, 287, 33 S.Ct. 312, 315, 57 L.Ed. 510 (1913).

13. True, *Harlow* restricts qualified immunity to "government officials," while the constitution requires "state action." Since § 1983 requires action "under color of state law," only government officials acting under color of state law may assert qualified immunity. Accordingly, there remains the theoretical possibility that a government official acting under color of state law might not satisfy the state action requirement. The concepts of action under color of state law and state action, however, are coterminous. *See* Chester J. Antineau, 1 Federal Civil Rights Acts § 56 at 103 (2d ed. 1980). Nevertheless, while the Supreme Court has held that every act that meets the state action requirement also constitutes action under color of state law, it has not held the converse. The situation identified by the Supreme Court in which action under color of state law would not constitute state action, however, has little relevance to the present case. The Court gave the example of a private individual applying a state statute, which was held to constitute action under color of state law, but which might not constitute state action. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752 n. 18 (1982). In contrast, the Court pointed out that "it is clear that in a § 1983 action brought against a state official, [as in the present case,] the statutory requirement of action 'under color of state law' and the 'state action' requirement ... are identical." *Id.* at 929, 102 S.Ct. at 2749.

tion to apply for the permanent CEO position, Burrell assisted the board in its selection of a new CEO.

On July 1, 1987, Baggarly joined First Federal as president and CEO. Burrell stayed on as senior vice president. Shortly after Baggarly's arrival on the job, conflicts over their respective responsibilities arose between Burrell and Baggarly. These conflicts escalated to the point where both Burrell and Baggarly decided to place their grievances before First Federal's board. The board meeting was set for April 20, 1988.

Before we turn to the board meeting, we temporarily pick up a parallel story line which will lead us on a different path to the same meeting. In early 1987, an anonymous letter critical of the level of public assistance received by GMC appeared in *The Atlanta Constitution.* This letter created a big stir in Milledgeville. On account of their previous public criticisms of GMC, Burrell and her husband, Charles Burrell, were among those suspected of having written the letter. Shortly after the anonymous letter appeared, Goldstein, who had known Burrell since 1972 and habitually dropped by First Federal to chat with her, visited Burrell at her office and informed

her that Baugh apparently thought Burrell might have written the letter. Goldstein also told Burrell that "we would hope that you would not be doing anything against G.M.C." [14] Burrell denied having authored the letter. Some weeks later, Goldstein again brought up the anonymous letter during another visit to Burrell at First Federal. He reported to Burrell that a fellow GMC trustee defended her in a discussion about possible authors of the anonymous letter.

On March 12, 1988, *The Milledgeville Union Recorder* published a letter to the editor signed by Burrell which accused GMC of improperly charging tuition while receiving public funds, of discriminating against poor students by charging tuition, of advancing the goal of racial segregation, and of practicing racial discrimination in its hiring practices. Some days later, *The Macon Telegraph* picked up the letter and *The Atlanta Constitution* printed an article about GMC based on an interview with Burrell.[15] In the wake of Burrell's public indictment of GMC, First Federal lost around $100,000 in deposits, with Sonny Goldstein, defendant Goldstein's brother, withdrawing approximately ninety percent of that amount.[16]

14. During the course of her two depositions in this case, Burrell at times testified that Goldstein did not speak in the plural, but referred only to his own wishes.

15. Around the end of March and the beginning of April, Baggarly met Baugh for the first and last time in Baugh's office at City Hall. Both Baggarly and Baugh flatly deny that, at that meeting or at any other time, they discussed Burrell, her criticism of GMC, or any plans to have her fired. Burrell admitted at deposition that she did not know what Baugh and Baggarly discussed at the meeting. Baggarly testified on deposition that he tried to convince Baugh to participate in a chamber of commerce membership drive he headed. According to Baggarly, he asked Baugh to speak at a kickoff campaign the next day and publicly to join the chamber of commerce at that campaign. Baugh confirms that they did not discuss Burrell and that Baggarly asked him for a private donation to the chamber of commerce. Considering that Burrell cannot offer evidence of the contents of Baugh's and Baggarly's meeting, that Baugh and Baggarly provide a reasonable and consistent explanation for their meeting, that Baugh and Baggarly flatly deny having discussed Burrell, only one fact can be inferred from their meet-

ing: that the meeting took place. Any conclusion about the content of their discussion in contradiction to their testimony would qualify as speculation, not inference. In sum, the naked fact of Baugh's and Baggarly's meeting, considered independently or in conjunction with all other inferable facts in the record, does not permit the inference that Baugh and Baggarly conspired to have Burrell fired.

16. Burrell and her husband also testified on deposition that Howard Pounds, the Milledgeville fire chief, told them about at least one meeting at City Hall involving Baugh, Goldstein, and at least one other member of the board of aldermen. According to Charles Burrell, Pounds alerted them to "retaliation measures [that are] being planned, taken by persons who are in places of power in the City." Specifically, Charles Burrell testified about meetings Pounds overheard, or participated in, during which a conspiracy to have his wife fired was discussed. The Burrells' testimony regarding Pounds' statements about the meetings at City Hall would be inadmissible in court as hearsay. Pounds, moreover, categorically denied ever having made any of the statements the Burrells attribute to him or ever having overheard or par-

On April 20, 1988, First Federal's board met to settle the conflict between Burrell and Baggarly. Burrell and Baggarly separately addressed the board. After a discussion that centered on Burrell's and Baggarly's inability to cooperate but also touched on the loss of deposits caused by Burrell's criticism of GMC, the board authorized Baggarly to exercise his power as CEO to take whatever action he deemed appropriate regarding any employee of First Federal. Baggarly then requested Burrell's resignation, but Burrell refused to step down. Baggarly fired her the next day.[17]

█ In a nutshell, Burrell asserts that Baugh, Goldstein, and Baggarly conspired to have her fired in retaliation for her and her husband's public criticism of GMC and thereby violated her First Amendment right to freedom of speech. A review of the facts inferable from the record before the district court reveals, however, that they cannot support a claim that either Baugh or Goldstein engaged in acts which a reasonable public official in Baugh's or Goldstein's shoes would have recognized as violations of Burrell's free speech right. *See Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir.1989) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)). Assuming, without deciding, that Baugh and Goldstein would have violated a clearly established constitutional right by conspiring with Baggarly to have Burrell fired for speaking out against GMC, the record does not contain inferable facts that could support a finding that either Baugh or Goldstein in any way conspired with Baggarly to discharge her for her public criticism of

GMC. Without a conspiracy, there obviously is no constitutional violation. Without a constitutional violation, there can be no violation of a clearly established constitutional right. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992) (citing *Siegert v. Gilley*, —— U.S. ——, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)).

We emphasize that we do not mean to require section 1983 plaintiffs to produce a "smoking gun" to overcome the qualified immunity hurdle. *See Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir.1990) (smoking gun not required to establish state action in section 1983 suit), *cert. denied*, —— U.S. ——, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). Burrell's section 1983 claim against Baugh and Goldstein, however, lacks far more than a smoking gun. Burrell's complaint is made of insinuations that collapsed under the weight of depositions. Pure hearsay allegations evaporated when the purported declarants flatly denied having made the statements attributed to them. *See supra* note 13. Evidentiary leads simply did not pan out when put to the deposition test. A cloud of allegations of intense controversy over GMC in Milledgeville could not conceal the absence of any admissible evidence of the alleged conspiracy between Baugh, Goldstein, and Baggarly. Even well-founded allegations of widespread disapproval of the Burrells' criticism of GMC do not permit us to infer the conspiratorial acts that would allow Burrell's section 1983 claim against Baugh and Goldstein to avoid their claims of qualified immunity.

ticipated in any conspiratorial meetings at City Hall. The Burrells' statements therefore cannot form the basis on which we can infer facts in support of their claims. The same applies to the barrage of other statements and acts the Burrells attribute to Pounds, in particular statements regarding Baugh's alleged support for a petition introduced after the letter of March 12, 1988, at a deacons' meeting of the Burrells' and Pounds' church, which called for the personnel committee and the pastor to request paid staff members to "refrain from expressing their views on political issues in public media." Charles Burrell was a paid staff member of the church.

17. According to the deposition testimony of a member of First Federal's board of directors, Lee Dickens, Baugh, at a party at Baugh's country home after Burrell's discharge, expressed to a group of people including Dickens his dissatisfaction with Burrell's criticism of GMC. While this statement after Burrell's discharge to a group of people including a member of First Federal's board further supports the inference that Baugh was upset about Burrell's criticism of GMC, it does not permit the inference that Baugh sought to influence members of First Federal's board to fire Burrell.

As the district court correctly noted, *see supra* op. at p. 789, a section 1983 conspiracy may be proved by circumstantial evidence and, in this sense alone, the law does not require the plaintiff to produce a smoking gun. This observation does not relieve us of our duty, however, to scrutinize each piece of admissible circumstantial evidence in isolation and then in combination with all other pieces of admissible circumstantial evidence to determine whether all admissible pieces establish a conspiracy.

Burrell points out that we have recognized a "strong policy reflected in the decisions of the Supreme Court and this Circuit against resolving complex First Amendment issues on a motion for summary judgment." *Harden v. Adams*, 760 F.2d 1158, 1166 (11th Cir.), *cert. denied sub nom. Grimmer v. Harden*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). There is nothing complex about the First Amendment issue in this case. Our conclusion that Baugh and Goldstein are entitled to qualified immunity against Burrell's section 1983 claim does not depend on the complexity or simplicity of the constitutional right in question. It turns solely on the absence of facts inferable from the record that support the allegation that Baugh and Goldstein violated any constitutional right, however complex.

Even giving Burrell the benefit of all inferences, the pieces in Burrell's section 1983 puzzle simply do not fit together to create the image of a conspiracy between Baugh, Goldstein, and Baggarly to have her fired for exercising her free speech right. Baugh and Goldstein therefore are immune to Burrell's section 1983 claim.[18]

**B.**

Before deciding whether Baugh and Goldstein are entitled to summary judgment against Burrell's section 1985(3) claim, we must determine whether public officials in general can claim qualified immunity to avoid liability under section 1985(3). We hold that they may not and therefore affirm the district court's denial of Baugh's and Goldstein's motion for summary judgment on the ground of qualified immunity as to Burrell's section 1985(3) claim.

While only state actors are subject to a section 1983 claim, a section 1985(3) action may be brought against anyone conspiring to deprive another of the equal protection of the laws, or of equal privileges and immunities under the laws.[19] Unlike a claim under section 1983,[20] which does not need to assert a specific intent to deprive another of a federal right, *see Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds by Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a claim under section 1985(3) must allege a class-based, invidiously discriminatory purpose behind the defendants' action. We recently had occasion to comment on the elements of a cause of action under section 1985(3):

> The elements of a cause of action under section 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United

---

**18.** We stress that we have jurisdiction only to determine whether Baugh and Goldstein are entitled to qualified immunity against Burrell's § 1983 claim. As we pointed out earlier, *see supra* note 9, we do not decide whether Burrell's § 1983 or 1985(3) claims would survive a summary judgment motion on grounds other than qualified immunity. We merely hold that the record does not permit the inference of facts

that, if proved, would establish that Baugh or Goldstein engaged in acts which a reasonable public official in Baugh's or Goldstein's shoes would have recognized as violations of Burrell's free speech right.

**19.** *See supra* note 3.

**20.** *See supra* note 2.

States." *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). More specifically, the second element requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 829, 103 S.Ct. at 3356 (quoting *Griffin* [*v. Breckenridge*], 403 U.S. [88] at 102, 91 S.Ct. [1790] at 1798 [29 L.Ed.2d 338]).

*Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624, 627–28 (11th Cir.1992) (footnote omitted).

Unlike in section 1983 actions, public officials therefore will not be subject to liability under section 1985(3) unless their actions were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* This narrow intent requirement erects a significant hurdle for section 1985(3) plaintiffs. Section 1985(3) actions often stand or fall on the plaintiff's ability to establish the specific type of discriminatory animus behind the conspirators' actions. *See, e.g., Scott,* 463 U.S. at 835–39, 103 S.Ct. at 3359–61 (plaintiffs failed to identify requisite class-based animus); *Lucero,* 954 F.2d at 627–29 (same); *Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788, 794 (5th Cir.1989) (same). Public officials thereby enjoy an additional protection against section 1985(3) actions not available to them in section 1983 actions.

■ We hold that this additional safeguard obviates the need for granting public officials qualified immunity in section 1985(3) actions. Exposing public officials to section 1983 liability for good faith violations of constitutional rights not clearly established would excessively chill their willingness to make the discretionary calls their office requires of them. There exists, however, no analogue to this convincing policy consideration in the section 1985(3) context. Denying public officials qualified

immunity under section 1985(3) does not threaten the breathing space they need for making discretionary decisions. On the contrary, "racial, or perhaps otherwise class-based, invidiously discriminatory animus" has no place in public policy and any actions by public officials based on such animus deserve to be chilled with the full force of federal law.

Accordingly, public officials cannot raise a qualified immunity defense to a section 1985(3) claim. Baugh and Goldstein therefore are not immune to Burrell's section 1985(3) claim.[21]

### III.

Goldstein and Baggarly bring appeal No. 90–8540 individually and in their official capacities. We affirm the district court's denial of summary judgment on Burrell's section 1983 and 1985(3) claims. Again, we first address the section 1983 claim.

### A.

■ Settling an issue it had left open in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court recently held that private defendants faced with section 1983 liability for invoking a state replevin, garnishment or attachment statute may not avail themselves of qualified immunity. *Wyatt v. Cole,* —— U.S. ——, ——, 112 S.Ct. 1827, 1829, 118 L.Ed.2d 504 (1992). The Court thereby directly overruled contrary decisions in three circuits, including our own. *See Jones v. Preuit & Mauldin,* 851 F.2d 1321, 1323–24 (11th Cir.1988) (en banc), *vacated on other grounds,* 489 U.S. 1002, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989); *see also Buller v. Buechler,* 706 F.2d 844, 850–53 (8th Cir.1983); *Folsom Inv. Co. v. Moore,* 681 F.2d 1032, 1036–38 (5th Cir. Unit A 1982). Although the Court did not explicitly overrule decisions holding

---

**21.** Our conclusion that qualified immunity does not protect public officials from § 1985(3) liability should not be misconstrued as an intimation that we find all the elements of a § 1985(3) claim present in this case. On the contrary, we express serious doubt whether Burrell has alleged facts sufficient to satisfy § 1985(3)'s requirement of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."

that qualified immunity is available to private defendants in other circumstances, the Court's analysis does not bode well for the continued vitality of these decisions. Instead of restricting its holding to attachment cases, the Court merely left open "the possibility that private defendants faced with [section] 1983 liability under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), could be entitled to an affirmative defense based on good faith and/or probable cause or that [section] 1983 suits against private, rather than governmental parties could require plaintiffs to carry additional burdens." *Wyatt,* —— U.S. at ——, 112 S.Ct. at 1834.

We need not diagnose the current vitality of court of appeals decisions allowing private defendants to assert qualified immunity in non-attachment cases, however, since they would clearly be distinguishable from the present case even in the event they should survive *Wyatt* intact. Even if *Wyatt* were to permit us to consider these opinions, we would have to conclude that the numerous cases barring private defendants from relying on qualified immunity in section 1983 actions speak more closely to the present case.

A cursory review of the decisions permitting private defendants to claim qualified immunity easily reveals their irrelevance. The Tenth Circuit, in *DeVargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714 (10th Cir.1988), held that the qualified immunity doctrine protects a private defendant who acted in accordance with the duties imposed by a government contract, performed a governmental function, and is sued solely on the basis of acts performed pursuant to the contract. *Id.* at 722. In *Frazier v. Bailey*, 957 F.2d 920, 929 (1st Cir.1992), the First Circuit held that "private parties under contract to perform statutorily mandated governmental duties are entitled to qualified immunity as functionally governmental employees." *Id.* at 928. In another case, *Rodrigues v. Furtado*, 950 F.2d 805 (1st Cir.1991), the First Circuit similarly ruled that a physician under court order to perform a vaginal cavity search was entitled to raise a qualified immunity defense on the ground that she was "invested with [and had accepted] the responsibilities of a public official in the public interest." *Id.* at 815 (quoting *Duncan v. Peck*, 844 F.2d 1261, 1264 (6th Cir.1988)).

Next, we turn to the decisions prohibiting private defendants from asserting qualified immunity. The Ninth Circuit, in *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), withheld qualified immunity from a private landlord who had enlisted the services of a police officer to effect an allegedly unconstitutional eviction. *Id.* at 385 n. 10. In so holding, the *Howerton* court suggested that *Lugar* could be read as permitting defendants to raise compliance with a state statute as an affirmative defense. *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2757 n. 23, 73 L.Ed.2d 482 (1982)). In the recent case of *Felix de Santana v. Velez*, 956 F.2d 16 (1st Cir.1992), the First Circuit refused to extend qualified immunity to a private defendant who conspired with a district attorney to indict a co-worker for perjury. *Id.* at 19–20. Fourteen years earlier, the First Circuit, in *Downs v. Sawtelle*, 574 F.2d 1, 15–16 (1st Cir.), *cert. denied*, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978), denied qualified immunity to the plaintiff's sister and spendthrift guardian who was alleged to have conspired with government officials to sterilize the plaintiff against her will, to delay her marriage, and to remove her second child from her custody. *Id.* at 3–4, 15–16. Finally, the Sixth Circuit, in *Duncan v. Peck*, 844 F.2d 1261 (6th Cir.1988), refused to grant private defendants qualified immunity, *id.* at 1263–67, but then went on to find that the private defendant in the case at hand was entitled to summary judgment on the basis of the common law good faith defense to malicious prosecution and wrongful attachment, as opposed to a good faith immunity, *id.* at 1267–68.

This latter set of decisions speaks more meaningfully to the present case. Goldstein and Baggarly did not fulfill their duties under a government contract, *cf.*

*DeVargas*, 844 F.2d at 722; *Frazier*, 957 F.2d at 929, nor were they under a court order to assume the "responsibilities of a public official in the public interest," *cf. Rodrigues*, 950 F.2d at 814 (quoting *Duncan*, 844 F.2d at 1264). Goldstein and Baggarly instead are alleged to have conspired with public officials to deprive Burrell of her constitutional rights. These alleged activities are of the same cloth as the conspiracies alleged in *Santana*, where the private defendant allegedly conspired with a district attorney to indict the plaintiff for perjury, 956 F.2d at 19–20, and in *Downs*, where the private defendant allegedly conspired with public officials to deprive the plaintiff of certain constitutional rights, 574 F.2d at 15–16. Needless to say, the First Circuit held that the defendants in neither case could seek the cover of qualified immunity.

In a case like the present one, where the private defendants are not alleged simply to have fulfilled their duties under a government contract, or to have assumed under court order the responsibilities of a public official, but are alleged to have acted in concert with public officials for the sole purpose of depriving another of her constitutional rights, private defendants cannot claim the protection of qualified immunity. We not only have no intention of encouraging this kind of conduct,[22] but most certainly intend to punish it. Private individuals who associate themselves with a public official to encroach on another's constitutional rights must bear the risk of trial.

The qualified immunity defense serves to give public officials the peace of mind required for their day-to-day discretionary decisions. Accordingly, it shields the public official from liability for wrong discretionary calls, provided they were made in good faith. The adoption of qualified immunity for public officials therefore reflects a policy determination that it is better to have

public officials make mistaken decisions based on a good faith interpretation of the law, than not to make any decisions at all. *See Wyatt*, —— U.S. at ——, 112 S.Ct. at 1833.

In contrast, public policy clearly counsels against employing the qualified immunity defense to encourage private individuals to redress their differences with another person by conspiring with public officials to deprive that person of his or her constitutional rights. At any rate, if qualified immunity is not available to "private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid[,]" *id.*, it surely does not protect those who are alleged to have acted in concert with public officials for the sole purpose of violating another's constitutional rights.

■ Private defendants who allegedly conspired with public officials to deprive another of her constitutional rights therefore are not entitled to qualified immunity under section 1983. Accordingly, qualified immunity does not shield Baggarly and Goldstein against Burrell's section 1983 claim.

### B.

■ In part II B., we established that public officials cannot assert qualified immunity against a section 1985(3) claim. If qualified immunity to section 1985(3) liability is unavailable to public officials, it must also elude private defendants, including Baggarly and Goldstein.[23]

### IV.

For the reasons stated above we reverse the denial of summary judgment on the ground of qualified immunity to Baugh and Goldstein as public officials against Burrell's section 1983 claim, and affirm the denial of summary judgment on the ground

---

22. Our now defunct decision in *Jones* relied in part on the consideration that private individuals should be encouraged to avail themselves of state procedures to settle their personal disputes. *See Jones v. Preuit & Mauldin*, 851 F.2d 1321, 1326 (11th Cir.1988) (en banc), *vacated on other grounds*, 489 U.S. 1002, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989).

23. As pointed out above, Goldstein brings this appeal, No. 90–8540, individually and in his capacity as First Federal boardmember. *See supra* op. at p. 789.

of qualified immunity against Burrell's section 1983 claim to Goldstein and Baggarly as private defendants. Finally, we affirm the denial of summary judgment on the ground of qualified immunity against Burrell's section 1985(3) claim to Baugh, Goldstein, and Baggarly.

As to No. 90–8540, AFFIRMED in part and REVERSED in part.

As to No. 90–8760, AFFIRMED.

As to No. 90–8930, DISMISSED.