UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-2233

ALAN AULSON ET UX. MAUREEN AULSON,

Plaintiffs, Appellants,

v.

CHARLES BLANCHARD, ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge] 



Before

Selya, Stahl and Lynch,

Circuit Judges. 



Gary S. Sackrider for appellants. 
Joyce Frank, with whom Michele E. Randazzo and Kopelman and 
Paige, P.C. were on brief, for appellees. 



April 25, 1996


SELYA, Circuit Judge. This appeal demands that we mull SELYA, Circuit Judge. 

the prerequisites for liability under the Ku Klux Klan Act, 42

U.S.C. 1985(3) (1994). We hold that (1) the class-based animus

required to ground a private right of action under the statute

applies to conspiracies allegedly involving public officials in

the same way as it applies to all other conspiracies; and (2) the

requirement is not satisfied where, as here, no sufficiently

defined class appears. Accordingly, we affirm the district

court's dismissal of the action.

I. BACKGROUND I. BACKGROUND

Whether or not it is true that all politics is local,

this case bears witness that local politics, no less than

national politics, can become meanspirited. From 1984 to 1990,

plaintiff-appellant Alan Aulson served as a selectman in

Georgetown, Massachusetts. In his complaint, he alleges that the

defendants (a cadre of elected and appointed municipal

officeholders) are members of an incumbent group of "old guard

politicians" who more or less run things in the town. In

contrast, he is a "member[] of a political group which supports

candidates who oppose the politics of the `old guard.'" The

complaint charges that Aulson paid a stiff price for his

opposition: the members of the old guard collogued against him

and wreaked their vengeance by such nefarious means as conducting

illegal searches pursuant to sham prosecutions. This course of

conduct, he asserts, gives rise to a cause of action under 42

U.S.C. 1985(3).

2

Aulson originally brought his suit in a state venue.1

Remarking the federal question, the defendants removed it to the

district court and then sought dismissal under Fed. R. Civ. P.

12(b)(6). Despite the plaintiff's objection, the district court

granted the motion to dismiss. This appeal ensued.

II. ANALYSIS II. ANALYSIS

Inasmuch as the trial judge dismissed the complaint for

failure to state an actionable claim, we review his decision de

novo, accepting as true all well-pleaded factual averments and

indulging all reasonable inferences in the plaintiff's favor.

See Leatherman v. Tarrant County N. I. & C. Unit, 507 U.S. 163, 

164 (1993); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 

52 (1st Cir. 1990). We hasten to add, however, that this

deferential standard does not force an appellate court to swallow

the plaintiff's invective hook, line, and sinker; bald

assertions, unsupportable conclusions, periphrastic

circumlocutions, and the like need not be credited. See Correa- 

Martinez, 903 F.2d at 52; Dartmouth Review v. Dartmouth Coll., 

889 F.2d 13, 16 (1st Cir. 1989). It is only when the facts

alleged, if proven, will not justify recovery that an order of

dismissal under Rule 12(b)(6) may stand. See Gooley v. Mobil Oil 

Corp., 851 F.2d 513, 514 (1st Cir. 1988). 

A A

Section 1985(3) proscribes certain enumerated
 

1Technically there are two plaintiffs (Aulson and his wife).
Since Mrs. Aulson's presence does not affect the legal issues
before us, we omit further reference to her.

3

conspiracies.2 To state a claim under 1985(3) a plaintiff

must allege the existence of (1) a conspiracy, (2) a

conspiratorial purpose to deprive a person or class of persons,

directly or indirectly, of the equal protection of the laws or of

equal privileges and immunities under the laws, (3) an overt act

in furtherance of the conspiracy, and (4) either (a) an injury to

person or property, or (b) a deprivation of a constitutionally

protected right or privilege. See Griffin v. Breckenridge, 403 

U.S. 88, 102 (1971). In Griffin, the Supreme Court placed a 

gloss on these four elements, effectively adding a fifth

requirement. It construed the statute's references to "equal

protection" and "equal privileges and immunities under the laws"

to signify that a plaintiff may recover thereunder only when the

conspiratorial conduct of which he complains is propelled by

"some racial, or perhaps otherwise class-based, invidiously

discriminatory animus." Id. 

B B

This added requirement looms as an insurmountable

obstacle to the plaintiff's attempted embrace of 1985(3). He

seeks to ameliorate this difficulty in two different ways: he

strives first to detour around the obstacle, and, failing, he

then tries to climb over it.

 

2The statute confers a private right of action for injuries
occasioned when "two or more persons . . . conspire . . . for the
purpose of depriving, either directly or indirectly, any person
or class of persons of the equal protection of the laws, or of
equal privileges and immunities under the laws . . . ." 42
U.S.C. 1985(3).

4

1. Public/Private Conspiracies. The plaintiff's 1. Public/Private Conspiracies. 

effort to bypass the point entirely centers around his insistence

that the requirement of a class-based discriminatory animus

applies only to wholly private conspiracies (that is,

conspiracies that do not involve public officials acting as

such), and that he need neither allege nor prove a class-based

animus in this action (which is directed at a conspiracy that

allegedly involves public officials doing the public's business).

This gambit has been tried in several other circuits

and has uniformly been found wanting. See Bisbee v. Bey, 39 F.3d 

1096, 1102 (10th Cir. 1994), cert. denied, 115 S. Ct. 2577 

(1995); Haverstick Enterps., Inc. v. Financial Fed. Credit, Inc., 

32 F.2d 989, 994 (6th Cir. 1994); Gagliardi v. Village of 

Pawling, 18 F.3d 188, 194 (2d Cir. 1994); Burrell v. Board of 

Trustees of Ga. Military Coll., 970 F.2d 785, 794 (11th Cir. 

1992), cert. denied, 507 U.S. 1018 (1993); Munson v. Friske, 754 

F.2d 683, 694-95 & n.8 (7th Cir. 1985). Although this court has

never squarely repudiated the gambit, we have on at least two

occasions required (albeit without substantive comment) that a

class-based animus be shown notwithstanding that public officials

were alleged to be active participants in the particular

conspiracies there at issue. See Romero-Barcelo v. Hernandez- 

Agosto, 75 F.3d 23, 34 (1st Cir. 1996); Daley v. Town of New 

Durham, 733 F.2d 4, 7 (1st Cir. 1984). Thus, following the path 

down which the plaintiff beckons not only would set us apart from

our sister circuits but also would undermine our own precedents.

5

In all events, an unforced reading of 1985(3) affords

no principled basis for distinguishing between public and private

conspiracies. Griffin neither supports nor suggests the 

existence of such a distinction, and, at any rate, it is not the

proper province of a federal court to rewrite a statute under the

guise of interpretation. Thus, we decline the plaintiff's

invitation to create by judicial fiat two classes of 1985(3)

conspiracies along a public/private axis.

So ends this phase of our inquiry. To the extent that

we have not previously made the scope of the requirement

explicit, we now hold that to state a claim under 1985(3) in

respect to conspiracies involving public officials, private

actors, or both, plaintiffs must allege that the conduct

complained of resulted from an invidiously discriminatory class-

based animus.

2. Cognizable Classes. The plaintiff next struggles 2. Cognizable Classes. 

to surmount the obstacle instead of skirting it. He contends

that he is a member of a class protected by 1985(3), and that he

has alleged as much. His contention does not withstand the

mildest scrutiny.

The complaint is a lengthy, somewhat prolix narrative.

In regard to the class-based animus requirement, however, it

states nothing more than that Alan Aulson and a named confederate

(not a party to the suit) are "representative members" of a

"class" that is composed solely of persons who support candidates

opposed to the politics of the "old guard," and that the

6

defendants are members of the "old guard." On this skimpy

predicate, the plaintiff posits that the ad hoc "opposition 

group" is a class, and that the defendants' supposed animus

against it is class-based within the meaning ascribed to that

adjectival term by the Griffin Court. We do not agree. 

We have previously interpreted the Griffin gloss to 

denote that plaintiffs must allege facts showing that (1) the

defendants conspired against them because of their membership in

a class, and (2) the criteria defining the class are invidious.

See Hahn v. Sargent, 523 F.3d 461, 469 (1st Cir. 1975), cert. 

denied, 425 U.S. 904 (1976); Harrison v. Brooks, 519 F.2d 1358, 

1360 (1st Cir. 1975); cf. Bray v. Alexandria Women's Health 

Clinic, 506 U.S. 263, 269 (1993) (holding that women seeking 

abortions are not a class within the confines of 1985(3));

United Bhd. of Carpenters v. Scott, 463 U.S. 825, 837 (1983) 

(holding that a group defined by economic criteria does not

constitute a class for purposes of 1985(3)). The Supreme Court

has not decided whether political differences are invidious

criteria that qualify the classes that they define for the

protection of 1985(3). See Scott, 463 U.S. at 837 (reserving 

the question of whether 1985(3) covers more than racially

directed conspiracies); Griffin, 403 U.S. at 102 n.9 (same). 

Although other federal courts have divided on this

question, see infra, we have not yet had occasion to lend our 

institutional voice to the rising cacophony that surrounds it.

Nor need we do so today. Whether or not political classes are

7

covered by 1985(3), the particular class that Aulson proposes

does not constitute a cognizable class at all.

The notion of a cognizable class includes two separate

and distinct components. The first component focuses on the

substantive characteristic defining the class, e.g., race or

gender or political affiliation. While it is universally

acknowledged that racial classes are within the ambit of 

1985(3), see, e.g., Griffin, 403 U.S. at 102, no such consensus 

exists anent political classes. Some courts have concluded that

political classes are within the protective pale of 1985(3)

because reference to political characteristics comprises an

invidious method for subjecting persons to differential

treatment. See, e.g., Conklin v. Lovely, 834 F.2d 543, 549 (6th 

Cir. 1987) (holding that 1985(3) may shield a political class);

Keating v. Carey, 706 F.2d 377, 387-88 (2d Cir. 1983) (same); 

Perez v. Cucci, 725 F. Supp. 209, 252 (D.N.J. 1989) (same), 

aff'd, 898 F.2d 139 (3d Cir. 1990) (table). Other courts have 

reached the opposite conclusion. See, e.g., Grimes v. Smith, 776 

F.2d 1359, 1366, 67 (7th Cir. 1985) (holding that political

classes are not so protected); Harrison v. KVAT Food Mgmt., Inc., 

766 F.2d 155, 163 (4th Cir. 1985) (same); Morales-Narv ez v. 

Rossello, 852 F. Supp. 104, 115 (D.P.R. 1994) (same), aff'd on 

other grounds, 65 F.3d 160 (1st Cir. 1995) (table). 

The second component, by contrast, focuses not on the

particular defining characteristic of the putative class, but on

whether there is any identifiable class at all. We emphasize

8

that this inquiry is distinct from the question of whether a

group denominated by a particular characteristic is sheltered

from discrimination by 1985(3). No matter what the alleged

basis for discrimination, the allegation of a "class-based

animus" naturally presumes that there is a specific, identifiable

class against whom the defendants can have discriminated.

Accepting for the sake of argument that political classes enjoy

the prophylaxis of 1985(3), the present plaintiffs nevertheless

stumble over this second prong.

Though there is no comprehensive set of rules for

determining when individuals constitute a class for purposes of 

1985(3), there are certain inescapable minimum requirements. For

instance, it is clear that at the very least a class must be more

than just a group of persons who bear the brunt of the same

allegedly tortious behavior. If a class could be defined from

nothing more than a shared characteristic that happened to form

the basis of the defendants' actions, the requirement of class-

based animus would be drained of all meaningful content. Justice

Scalia put the proposition in these terms:

Whatever may be the precise meaning of a
"class" for purposes of Griffin's speculative 
extension of 1985(3) beyond race, the term
unquestionably connotes something more than a
group of individuals who share a desire to
engage in conduct that the 1985(3)
defendant disfavors. Otherwise, innumerable
tort plaintiffs would be able to assert
causes of action under 1985(3) by simply
defining the aggrieved class as those seeking
to engage in the activity the defendant has
interfered with. 

Bray, 506 U.S. at 269. 

9

Our own case law confirms that a class cannot be

defined solely on the basis of harm inflicted. In Creative 

Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir.), cert. 

denied, 459 U.S. 989 (1982), we considered a 1985(3) claim 

brought by a developer, alleging that a municipal planning board

discriminated against a class of future homeowners in the course

of rejecting a proposed subdivision. We held that even if the

developer could sue on behalf of this class, no 1985(3) claim

would lie because the class was no more than "an undefined group

of people with unknown income, racial, political and social

characteristics." Id. at 834. The only thing that the members 

of this group had in common was that they stood to be

disadvantaged by the defendants' actions. Consequently, the

complaint "failed to identify any definite class which would

satisfy section 1985(3)'s requirement." Id. 

The principle that emerges from these cases is that a

class, to be cognizable, must be identifiable by reference to

"something more than . . . [the members'] desire to engage in

conduct that the 1985(3) defendant disfavors." Bray, 506 U.S. 

at 269. In other words, the line drawn by the substantive

characteristic must divide individuals into distinct, separate,

and identifiable groups. This means, for example, "white" as

opposed to "non-white," see, e.g., Stevens v. Tillman, 568 F. 

Supp. 289, 293 (N.D. Ill. 1983) (holding that whites constitute a

protected class under 1985(3)), "female" as opposed to "male,"

see, e.g., Libertad v. Welch, 53 F.3d 428, 449 (1st Cir. 1995) 

10

(holding that women constitute a protected class under 

1985(3)), or, if political classes are includable a matter on

which we do not opine "registered Republicans" as opposed to

other voters, see, e.g., Keating, 706 F.2d at 379 (holding that 

Republicans constitute a protected class under 1985(3)).

We hold, therefore, that a class is cognizable for

purposes of 1985(3)'s class-based animus requirement only when

it is comprised of a distinctive and identifiable group. For

this purpose, distinctiveness connotes that a reasonable person

can readily determine by means of an objective criterion or set

of criteria who is a member of the group and who is not. See 

Rodgers v. Tolson, 582 F.2d 315, 318 (4th Cir. 1978) (rejecting 

alleged class partly because it was "impossible to determine who

besides the [plaintiffs] belong to this class" and because the

plaintiffs had failed to identify "a larger group that could be

objectively identified by an observer"); Bricker v. Crane, 468 

F.2d 1228, 1233 (1st Cir. 1972) (noting that a class must be

"readily recognizable" in order to come within the scope of 

1985(3)), cert. denied, 410 U.S. 930 (1973). 

Measured against this benchmark, the group described by

the plaintiff falls short of qualifying as a cognizable class for

purposes of 1985(3)'s class-based animus requirement. The

plaintiff defines the group only as persons who support other

persons "opposed to the politics of the old guard," and offers

himself and one other former selectmen as "representative

members." As far as anybody can tell, aside from these two

11

"members" this group is wholly indeterminate. It might include

all the voters in Georgetown, or it might include only voters who

have spoken out against incumbent selectmen, or it might include

only the two individuals featured in the complaint, or it might

include anyone whose inclusion would benefit the plaintiff at any

given time. There is simply no way to characterize this group as

an identifiable segment of the community by reference to any

objective criteria, and, hence, it cannot serve as a cognizable

class within the purview of 1985(3). See Gleason v. McBride, 

869 F.2d 688, 695 (2d Cir. 1989) (rejecting class status under 

1985(3) when the plaintiff alleged only that he was "a political

opponent of the defendants and was extremely vocal in his

opposition to their management of the [municipality]"); Rodgers, 

582 F.2d at 317 (holding that a complaint which alleged

discrimination against a class of persons "in political and

philosophical opposition to" municipal commissioners did not

describe a "cognizable class" and therefore failed to state a

cause of action under 1985(3)).3

The lack of distinctiveness is especially striking in

this case because the proposed class is defined primarily in the

negative; that is, the plaintiff describes the class principally

with reference to what it opposes the old guard rather than

with reference to what it espouses. The ambiguities inherent in
 

3Concededly, the definition of any political class may face 
serious problems in this regard. But cf. Cameron v. Brock, 473 
F.2d 608 F.2d 608, 610 (6th Cir. 1973) (holding that "clearly
defined" political classes are covered by 1985(3)). We leave
those headaches for another day.

12

this negative definition compound the problem of identifying the

members of the class since there is no way for an objective

observer to identify the members of the other class. They could 

be a few of the incumbents, most of the incumbents, all the

incumbents, or some larger aggregation that includes incumbents

and their adherents. To put it bluntly, membership in both the

plaintiff's proposed class and the antagonist class (the old

guard) is, like beauty, almost exclusively in the eye of the

beholder. This is not the stuff of cognizability.

To sum up, the lone criterion that the plaintiff offers

to define the suggested class is opposition to the "politics of

the old guard." This description will not do because it draws no

readily identifiable line. Objectively speaking, a third party

at most can observe that the putative class is comprised of some

(unknown) persons who support some (unknown) political aspirants

who object to some (unknown) aspect of some (unknown) political

views or practices of some other (unknown) persons who have

enjoyed some (unknown) degree of political success in Georgetown

for some (unknown) period of time.

We have said enough on this score. By not alleging

discrimination against a distinctive, readily identifiable class

of persons, the plaintiff has failed to state an actionable claim

under 1985(3). See Gleason, 869 F.2d at 695; Rodgers, 582 F.2d 

at 317; see also Wilhelm v. Continental Title Co., 720 F.2d 1173, 

1176 (10th Cir. 1983) (affirming dismissal for failure to state a

claim when complaint did not "contain a description of a class of

13

persons or group that is sufficiently definite or precise to set

against the `class of persons' terminology in 1985(3)"), cert. 

denied, 465 U.S. 1103 (1984). Consequently, the lower court did 

not err in dismissing the action.

C C

We must attend to a last detail. At one point, the

plaintiff asked the district court for leave to amend the

complaint by naming one or two additional defendants. The court

denied the motion without prejudice to renewal if the case

survived a dispositive motion on behalf of the existing

defendants. The district court subsequently granted the

defendants' motion to dismiss without granting leave to amend.

On appeal, the plaintiff makes an oblique reference in the reply

brief that suggests he should have been given an opportunity to

replead.

We rebuff this suggestion for three reasons. First,

relief from an appellate court, requested for the first time in a

reply brief, is ordinarily denied as a matter of course, see 

Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990), and 

this case fits comfortably within the general rule. Second, to

the extent the request for leave to amend is before this court at

all, the plaintiff has advanced absolutely no developed

argumentation in support of it, and so we deem it to have been

abandoned. See Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st 

Cir. 1990); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), 

cert. denied, 494 U.S. 1082 (1990). Third, the only amendment 

14

that the plaintiff sought below involved adding defendants a

step that would have done nothing in terms of better defining a

class for purposes of 1985(3). Thus, the proposed amendment

would have been futile and the district court therefore did not

err in neglecting to authorize an amended complaint. See Foman 

v. Davis, 371 U.S. 178, 182 (1962); Correa-Martinez, 903 F.2d at 

59. Relatedly, if what the plaintiff now has in mind is

something other than adding defendants, he has not so stated,

and, in all events, we find nothing in the record which indicates

that he could possibly delineate a cognizable class and thereby

state an actionable claim under 1985(3). Mindful of these

circumstances, we will not permit the plaintiff to string this

litigation out further by attempting to replead in hopes that he

can resuscitate a case that, by all appearances, is terminal.

See Correa-Martinez, 903 F.2d at 59 (counselling against 

"needlessly prolong[ing] matters" when "an amendment would be

futile or would serve no legitimate purpose"); Dartmouth Review, 

889 F.2d at 23 (similar).

III. CONCLUSION III. CONCLUSION

We need go no further. Because the district court

appropriately granted the defendants' motion to dismiss without

simultaneously granting leave to amend, the judgment below must

be

Affirmed. Affirmed. 

15