**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-60568
_____

EDDIE M. BIGELOW,

Plaintiff-Appellant,

versus

UNITED HEALTHCARE OF MISSISSIPPI, INC.,
f/k/a COMPLETE HEALTH OF MISSISSIPPI, INC.,

MUNICIPAL CORPORATION OF PASS CHRISTIAN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

June 8, 2000

Before WIENER, BENAVIDES, and PARKER, Circuit Judges.

WIENER, Circuit Judge:

This case arises from an insurance coverage dispute between an employer and a former employee. Plaintiff-Appellant Eddie Bigelow appeals the district court's grant of judgment as a matter of law in favor of Defendants-Appellees United Healthcare of Mississippi, Inc. ("United Healthcare") and the Municipal Corporation of Pass Christian ("Pass Christian" or "the City"). Bigelow argues on appeal, as she did in the district court, that she is entitled to equitable relief under the Employee Retirement Income Security Act

1

of 1974 ("ERISA")[1] as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").[2]  Concluding that Bigelow would not be entitled to equitable relief under that statute and is not entitled to such relief under its close analog, the Public Health Services Act ("PHSA"),[3] we affirm the judgment of the district court.

I
Facts and Proceedings

This case was pleaded as arising under ERISA and COBRA and was ultimately submitted to the district court on stipulated facts. Pass Christian had hired Bigelow as a full-time employee in 1990. At that time, Pass Christian maintained a medical benefits plan for its employees, which was underwritten by Anthem Life Insurance

---

[1] 29 U.S.C. § 1001 et seq.

[2] 29 U.S.C. § 1161 et seq.

[3] 42 U.S.C. § 300bb-1 et seq.  As will be discussed more fully in the analysis section of this opinion, Bigelow clearly is not entitled to relief under ERISA and COBRA as those statutes are wholly inapplicable to government-sponsored health plans. Rather, Bigelow should have sought relief under the PHSA, which parallels COBRA in its requirement that health plans sponsored by governmental employers provide qualified employees with continuation health insurance coverage. Nevertheless, Bigelow's "wrong pew" complaint induced both the defendants and the district court to treat the case solely as an ERISA and COBRA case, with the result that all pleadings and papers that have been submitted to this court, up to and including the parties' appellate briefs, have incorrectly focused on ERISA and COBRA. Consequently, although we ultimately conclude that Bigelow's complaint should be treated as though it purports to state a claim under the PHSA, our recounting of the facts and proceedings of the case will, true to the case's history, revolve around ERISA and COBRA.

2

Company of America ("Anthem"). Bigelow joined the plan when she was hired by the City.

COBRA requires "group health plans" that are covered by ERISA to notify participating employees of their COBRA rights at the time they commence employment.[4] Bigelow received the required notice from Anthem in the form of a booklet. The booklet unequivocally stated that continuation coverage extends for only 18 months after termination. Bigelow did not receive any such notice directly from the City.

On March 30, 1994, Bigelow resigned from her position with the City. Ken Saucier, the City employee who handled the filing of Bigelow's retirement forms, asked her whether she wished to elect continuation coverage. Answering that she did, she filled out and filed the appropriate forms.

COBRA also requires that when enumerated "qualifying events" such as termination of employment occur, the "administrator" of a group health plan must again provide the affected employee with notice of his COBRA rights.[5] The parties are not in agreement whether, as a matter of law, Bigelow should be deemed to have received effective notice from Saucier. The two election forms that were signed by Bigelow do not themselves contain any mention of the 18 month limit on continuation coverage. One of the forms,

---

[4] 29 U.S.C. § 1166(a)(1).

[5] 29 U.S.C. § 1166(a)(4)(A).

3

however — the "COBRA Election Form for Continuation of Coverage" — instructs that "before making your decision regarding continuation coverage, [you should] read the continuation of coverage model statement which explains the law." Bigelow testified that she never received the model statement from Saucier. Regrettably, Saucier died prior to the beginning of this litigation, and only he could have testified on the City's behalf.

Under the terms of the City's plan, Bigelow was entitled to receive continuation coverage for 18 months. Thus, Bigelow's continuation coverage was scheduled to last through the end of September 1995.

The City pays a lump sum to the insurer on a monthly basis, covering premiums for all employees participating for that month. The City is then reimbursed by each employee for the amount of his individual premium. On September 29, 1995 — coincidentally one day before expiration of the period of 18 months following the commencement of her continuation coverage — Bigelow was notified by the City that it was switching insurers effective October 1 and that she needed to fill out coverage forms for the new insurance company, United Healthcare of Mississippi, Inc. ("UHM").[6] That afternoon, Bigelow went to the Pass Christian City Hall and completed the new coverage forms. The next day — September 30,

---

[6] At all times relevant to the instant case, UHM's name was "Complete Health Care of Mississippi, Inc." For simplicity's sake, we refer to the company throughout this opinion by its present name, "UHM."

4

1995 — was the last day that Anthem served as the City's insurance carrier. It was also the last day that Bigelow was legally entitled to continuation coverage under COBRA (or PHSA) and under the express terms of the City's group health plan. The parties have stipulated, however, that Bigelow in fact was inexplicably provided health coverage under UHM's policy for the month of October, the 19th month following termination of her employment with the City.

When UHM became the City's group health plan insurer on October 1, 1995, Bigelow was in arrears on her premium payments for July, August and September. On October 6, Bigelow made a large payment to the City covering her premium arrearages for July, August, and September as well as her present and future premiums for October, November, and part of December 1995. Bigelow had been in arrears on her payments for some months, yet the City had kept her coverage in effect by continuing to include the amount of her monthly premiums in the monthly lump sum payments it made to the insurance company. Although the City should not have paid Bigelow's premiums for October and November of 1995 because she was no longer eligible for continuation coverage, it nevertheless did so, presumably through inattention.

In mid-October of 1995, UHM sent Bigelow a pamphlet containing its summary plan description. The pamphlet contained information about COBRA, including the fact that continuation coverage expires 18 months after termination of employment. Bigelow concedes that

5

she did not read the pamphlet in any detail.

On October 31, 1995, Bigelow experienced medical problems while her doctor was out of town. The terms of the City's health plan required her to seek clearance from UHM before being treated by an alternate physician. UHM gave her clearance to see the alternate doctor on an emergency basis, but did not advise Bigelow that — according to UHM's computer system — her healthcare coverage was scheduled to expire the next day.[7]

Bigelow first became aware that her insurance coverage had been canceled when she went to a drug store on November 14, 1995 to pick up several prescriptions. She was advised by the pharmacist that UHM was refusing her insurance card. She paid for the prescriptions out of her own pocket then called UHM to inquire about the problem with her insurance coverage. The UHM employee with whom she spoke confirmed that her coverage had been canceled, but was unable to tell her when or why. Bigelow next called Pass Christian's City Hall and was told by the City's comptroller that she did not know why Bigelow's insurance coverage had been canceled. Another City employee told Bigelow that the City had paid her premium for November and that she should still be covered.

That same evening, Bigelow was admitted to the hospital. Because UHM continued to deny coverage, she was admitted as a

---

[7] As mentioned previously, Bigelow's continuation coverage should have expired at the end of September 1995; however, the parties stipulated that she was accorded full benefits through October 1995.

private pay patient. Over the next two weeks she underwent a number of medical procedures, including open heart surgery, incurring medical expenses totaling $218,237.18.

Late in November, the City realized that the reason Bigelow's coverage was being denied was because her continuation coverage had expired. The City tendered Bigelow a refund for her October and November premiums, but she refused to accept it, stating that she preferred to take the matter up with UHM. As Bigelow's December premium had not yet been paid to UHM, the City refunded her partial payment for December. In its accounting statement sent to UHM for December of 1995, the City gave itself a credit for the premiums that it had paid on Bigelow's behalf for October and November, explaining that she had been "canceled" during those months and that the premiums had been paid in error. UHM claims that this was the first time that it learned of Bigelow's coverage cancellation. That declaration cannot be accurate, however, as UHM had been denying her coverage for some weeks — at least since the pharmacy incident on November 14 — on the grounds that her coverage was canceled.

In May of 1996, Bigelow filed a complaint against UHM in the United States District Court for the Southern District of Mississippi. The complaint stated causes of action based on (1) state law theories of equitable estoppel and implied contract and (2) ERISA, as amended by COBRA. The district court ruled that

7

Bigelow's state law claims were preempted by ERISA,[8] and dismissed her ERISA claims on the ground that she had failed to exhaust her administrative remedies with UHM.

Bigelow exhausted her administrative remedies in 1997, then filed a new complaint against UHM in district court, naming Pass Christian as an additional defendant. All parties agreed to present the case to the district court for disposition on the basis of stipulated facts and memorandum briefs. Bigelow simultaneously filed a motion for summary judgment, which, although technically premature, was accepted by the court.

The court ruled in favor of the City and UHM. It concluded that any failure on the City's part to provide Bigelow with COBRA notice at the time her employment terminated was harmless because she in fact elected and received all the continuation coverage that she was entitled to under COBRA and the express terms of the group health plan. The court ruled that UHM, which started providing coverage after the expiration of Bigelow's 18 month continuation term, never had a duty to notify Bigelow of her continuation rights, and accordingly dismissed UHM from the suit. This appeal followed.

II
Analysis

Bigelow's argument in the district court and before this court

---

[8] We are not aware of any preemption provision in the PHSA like the express, total preemption provision of ERISA.

as well has concentrated on the alleged failure of the defendants to comply with their statutory duties under the COBRA provisions of ERISA. Pass Christian is a local governmental entity, however, and neither ERISA nor its COBRA provisions apply to government-sponsored health plans.[9] The rules for the provision of continuation coverage under government-sponsored health plans are instead established by the PHSA.[10] Thus, Bigelow's case is not technically well pled. Nevertheless, in light of (1) the liberal pleading rules applicable in federal court and (2) the striking similarity between COBRA and the relevant provisions of the PHSA, we shall consider the merits of the case as though Bigelow had pled a right to continuation coverage under the PHSA rather than under ERISA.[11]

---

[9] 29 U.S.C. § 1003(b)(1).

[10] 42 U.S.C. § 300bb-3.

[11] "The reference to a statute as being the basic ground upon which an action is brought, even if completely incorrect, is no ground for the dismissal of an action where there is a statute in existence which would warrant a valid cause of action for which relief could be granted upon the facts as pleaded." United States v. Provident National Bank, 259 F.Supp. 373, 376 (E.D. Pa. 1966), citing Missouri, Kansas & Texas Pailway Co. v. Wulf, 226 U.S. 570 (1913). See also United States v. Bruce, 353 F.2d 474, (5th Cir. 1965) ("[T]he Federal rules [] require only a short and plain statement of the claim, that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests") (quotation omitted); Ryan v. Illinois Dept. of Children and Family Services, 185 F.3d 751, 764 (7th Cir. 1999); Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995); Shannon v. Shannon, 965 F.2d 542, 552 (7th Cir. 1992).
We do not imply that federal courts have an affirmative obligation to search through the code books in an attempt to determine whether a plaintiff's pleadings state a valid claim under

The gravamen of Bigelow's complaint is that: (1) The defendants did not, as required by statute,[12] furnish her notice of her rights under the PHSA; (2) the inadequacy of the defendants' PHSA notice induced her wrongly to believe that her health insurance coverage under the City's plan would continue indefinitely, for as long as she continued to pay her premiums; (3) if she had been made aware by proper notice that her coverage under the City's plan would expire 18 months after the termination of her employment, she would have procured an alternate or successor source of health insurance; and (4) the defendants should be equitably estopped from refusing to pay the costs of the medical expenses that she incurred beginning in November of 1995.

The PHSA provides that "[a]ny individual who is aggrieved by the failure of a State, political subdivision, or agency or instrumentality thereof, to comply with the requirements of this title... may bring an action for appropriate equitable relief."[13] Any entitlement that Bigelow may have to equitable relief hinges in

---

any existing statute. Rather, we merely hold that when, as here, a plaintiff pleads a right to recovery under one of two virtually identical statutes, and it is later discovered that only the statute that was not pled is applicable to the plaintiff's claims, a court need not dismiss the case and require the re-litigation of the very same issues pursuant to the very same language but headed by a different title, but rather may take judicial notice of the existence of the applicable statute and treat the case as though it had been litigated pursuant to that statute from the outset.

[12] 42 U.S.C. § 300bb-6.

[13] 42 U.S.C. § 300bb-7.

10

the first instance on proof of the defendants' breach of the duty to "comply with the requirements of [the PHSA]." The relevant PHSA duty requires governmental employers to provide each employee with notice of his PHSA rights (1) at the time that he joins a government-sponsored group health plan and (2) at the time his employment is terminated.[14]

The district court was clearly correct in ruling that UHM did not fail to comply with these statutory duties because UHM was not Pass Christian's insurance carrier at the time that Bigelow was hired or at the time that she resigned. UHM therefore never had any duties under the PHSA with respect to Bigelow and was properly dismissed as a defendant in this case.

On the other hand, as Bigelow's employer Pass Christian failed to provide her with adequate notice of her PHSA rights at the time her employment terminated. Bigelow gave a sworn statement that she did not receive a copy of the continuation of coverage model statement from Ken Saucier at the time she signed her election forms. Because, as noted above, Saucier died before this matter was litigated, the City was unable to offer any evidence contradicting Bigelow's statement. Like the trial court, we therefore must accept Bigelow's version as true.

Even when we do so, however, we are convinced to affirm the district court's judgment that Bigelow is not entitled to equitable

_____

[14] 42 U.S.C. § 300bb-6.

11

relief under the PHSA. First, inasmuch as Bigelow was instructed by the City's continuation of coverage election form to request a copy of the "continuation of coverage model statement" before electing to accept coverage, the results flowing from her failure to do so must be laid at her feet. Had she heeded the instruction and obtained the statement, she would have been apprized of the fact that her continuation coverage would expire 18 months after her employment terminated. Second, the "model coverage statement" that Bigelow actually received from UHM in the middle of October, a full month prior to her hospitalization, was more than sufficient to put her on notice that her continuation coverage would expire —— actually had expired —— 18 months after her employment terminated. Thus, Bigelow's failure to obtain an alternate or successor source of health insurance coverage prior to November of 1995 is not so much attributable to the inadequacy of notice provided by the City as to her own failure adequately to read and heed the documents that <u>were</u> furnished to her.[15] Under such circumstances, she does not seek equity with respect to the issue of notice with entirely clean hands and therefore is not entitled to equitable relief under the PHSA.

Our holding today is only that Bigelow is not entitled to equitable relief under <u>federal law</u> on grounds of the defendants' alleged failure to notify her of her rights under the PHSA. We are

---

[15] <u>Compare</u> <u>Switzer v. Wal-Mart Stores, Inc.</u>, 52 F.3d 1294 (5th Cir. 1995).

12

not required to decide and therefore do not decide whether Bigelow might be — or might have been — able to state a valid claim against the City and UHM under state law because of her detrimental reliance on their acceptance of her premium payment on October 6. Although the district court ruled that Bigelow's state law claims are preempted by ERISA, that law is inapplicable to the instant case. We decline to address for the first time on appeal whether Bigelow's state law claims are preempted by the PHSA. This matter was not addressed by Bigelow or the City in the district court or in their respective appellate briefs, but rather was raised by this court sua sponte when we realized that Bigelow had relied from the outset on ERISA, a statute entirely inapplicable to government plans; and that the defendants had relied on ERISA preemption and had convinced the district court to rule accordingly in disposing of Bigelow's state claims.

The judgment of the district court with respect to Bigelow's federal claims for equitable relief is, in all respects, AFFIRMED.