IN THE DISTRICT COURT OF THE UNITED STATES FOR THE 

 MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION 

KELVIN MITCHELL, ) 
 ) 
 Plaintiff, ) 
 ) CIVIL ACTION NO. 
 v. ) 2:20cv252-MHT 
 ) (WO) 
TOWN OF HAYNEVILLE, ) 
ALABAMA, et al., ) 
 ) 
 Defendants. ) 

 OPINION AND ORDER 

 Plaintiff Kelvin Mitchell is the chief of police for 
the Town of Hayneville, Alabama, a position he has held 
more-or-less consistently since 2004. This suit concerns 
the more-or-less. 
 Mitchell alleges that he backed the wrong horse in a 
town council election and that the council summarily 
fired him in retaliation when it finally was able to 
convene a post-election quorum two years later. He was 
out of the job for about two and a half months; he then 
returned to administrative leave with pay and later 
resumed work as the police chief. He now names as 
defendants the Town of Hayneville, three current council 
members in their individual capacities only, and a former 

council member in both her official and individual 
capacities. He asserts six claims: violations of (1) the 
Fair Labor Standards Act (FLSA), 29 U.S.C. § 201; (2) the 
continued-coverage notice provisions of the Employee 

Retirement Income Security Act (ERISA), 29 U.S.C. § 1166; 
(3 & 4) his Fourteenth Amendment rights, as enforced 
through 42 U.S.C. § 1983, to procedural due process and 

to be free of retaliation for political activity 
protected by the First Amendment; and (5 & 6) state-law 
guarantees of his contract rights and protection from 
wrongful termination. All six of Mitchell’s claims are 

brought against the Town of Hayneville, and he brings his 
due-process and First Amendment claims against the four 
individual defendants as well. 
 The court has jurisdiction to hear his FLSA, ERISA, 

due-process, and First Amendment claims under 28 U.S.C. 
§ 1331 (federal question), 29 U.S.C. § 216(b) (FLSA), 
29 U.S.C. § 1132(e) (ERISA), and 28 U.S.C. 1343 (civil 

 2 
rights), and his state-law claims under 28 U.S.C. § 1367 
(supplemental jurisdiction). 

 The case is now before the court on defendants’ 
motion to dismiss Mitchell’s ERISA, due-process, and 
state-law claims. They also include in their motion the 
First Amendment claim to the extent it is brought against 

former council member Cynthia McDonald in her official 
capacity. For the reasons that follow, the court will 
grant in part and deny in part defendants’ motion. 

Mitchell’s ERISA claim will be dismissed, as he concedes 
it should be, because that statute’s notice requirements 
do not apply to government entities; however, he will be 
permitted to amend his complaint to state a similar claim 

under the applicable Public Health Services Act (PHSA) 
instead, 42 U.S.C. § 300bb-6. His due-process claims 
against the defendant councilmembers in their individual 
capacities are barred by qualified immunity, but his 

claim against the town may proceed. His claims against 
McDonald in her official capacity will be dismissed. His 
state-law claims are properly pleaded and may proceed. 

 3 
(Also, because they are not challenged in the motion to 
dismiss, Mitchell’s FLSA claim and his First Amendment 

claim will proceed, except to the extent that he brings 
the First Amendment claim against McDonald in her 
official capacity.) 

 I. MOTION-TO-DISMISS STANDARD 
 In considering a defendant’s motion to dismiss, the 

court accepts the plaintiff’s allegations as true, see 
Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and 
construes the complaint in the plaintiff’s favor, see 
Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993). The 

court may draw “reasonable inferences” from the facts 
alleged in the complaint. Chesser v. Sparks, 248 F.3d 
11117, 1121 (11th Cir. 2001). 
 To survive a motion to dismiss under Federal Rule of 

Civil Procedure 12(b)(6), a complaint “must contain 
sufficient factual matter, accepted as true, to ‘state a 
claim to relief that is plausible on its face.’” Ashcroft 
v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. 

 4 
Corp. v. Twombly, 550 U.S. 544, 570, (2007)). “A claim 
has facial plausibility when the plaintiff pleads factual 

content that allows the court to draw the reasonable 
inference that the defendant is liable for the misconduct 
alleged.” Id. 

 II. BACKGROUND 
 The details of the contested election that preceded 

Mitchell’s firing are set forth at length in his 
complaint, but only a few are relevant to his claims. In 
August 2016, the Town of Hayneville, Alabama, held its 
quadrennial municipal election. Mitchell supported an 

unsuccessful candidate for town council. This election 
became the subject of great controversy and voluminous 
litigation, ultimately producing a decision from the 
Supreme Court of Alabama. See Ex parte Scrushy, 262 So. 

3d 638 (Ala. 2018). On April 18, 2018, shortly after the 
election disputes were resolved in the courts, the 
council met and voted to remove Mitchell from his once 
and future position as police chief. 

 5 
 Mitchell was at the April meeting, but the facts 
alleged in the complaint indicate that he did not have 

prior notice of reasons why the council might seek to 
remove him from his post nor any opportunity to present 
his side of the story at that time. In early July, the 
council met again and voted to reinstate Mitchell to his 

position, but to place him on administrative leave with 
pay. While he was out of the job between April and July, 
Mitchell continued to receive a paycheck because he was 

being paid out his accrued leave time. His health-care 
coverage ended on July 1; based on the fact that he was 
returned to administrative leave with pay on July 2, the 
court infers that his coverage resumed that day. 

 In November 2018, Mitchell received a letter with 
notice of the reasons why the council was considering 
terminating him, and he was given the opportunity to 
request a hearing on the charges. He did so, and the 

hearing was held on December 3, 2018, with Mitchell and 
his attorney present. After hearing Mitchell’s evidence, 
the council met again on December 10 to decide whether 

 6 
to terminate him, but the vote split 2-2. Mitchell 
resumed his duties as police chief the following week and 

has remained in the job since then. 

 III. DISCUSSION 

 A threshold matter in resolving the claims that are 
the subject of the present motion is determining exactly 
what remedies Mitchell seeks.1 This turns out to be a 

complicated and hotly disputed question with consequences 
for nearly all counts of his complaint. He can’t be 
suing for his job because he continues to be the town’s 
police chief, but he could be suing for his job security 

because he claims he was never formally reappointed to 
the position, which carries certain tenure protections 
under Alabama law. He can’t sue for back pay because he 
continued to receive a paycheck through his return to the 

 1. Although Mitchell specifies certain remedies, he 
also requests “such further relief as the Court may 
award” for all of his claims, as well as “such other and 
further relief as is just and proper” for his suit as a 
whole. Amended Complaint (doc. no. 8) at 16-23. 
 7 
job in July 2018, but he could sue for the accrued leave 
time he expended to get that continued salary. 

 He also can’t sue for compensatory damages for the 
loss of his income or health insurance because, again, 
he continued to receive a paycheck throughout the 
relevant time period and his health-care coverage ended 

only a day before it resumed again. See Carey v. Piphus, 
435 U.S. 247, 254 (1978) (“Rights, constitutional and 
otherwise, do not exist in a vacuum. Their purpose is 

to protect persons from actual injuries to particular 
interests....”). If his procedural-due-process claim 
against the individual-capacity defendants were not 
barred by qualified immunity, he could sue for nominal 

damages, see id. at 266-67, or for punitive damages if 
he showed that the council members who terminated him had 
“evil motive or intent,” or demonstrated “reckless or 
callous indifference to the federally protected rights 

of others,” Smith v. Wade, 461 U.S. 30, 56 (1983). But 
as explained below, qualified immunity does bar this 
claim, so he cannot pursue damages on that count. 

 8 
 Punitive damages also are not available against the 
town itself. See City of Newport v. Fact Concerts, Inc., 

453 U.S. 247, 271 (1981). Ultimately, the court 
concludes that equitable remedies--such as injunctive or 
declaratory relief--are for the most part all that may 
be available to Mitchell on the claims that are the 

subject of the present motion to dismiss. 

 a. ERISA Claim 
 Mitchell brings suit against Hayneville under the 
provisions of ERISA enumerating employees’ rights to 
continuing health-care coverage for a period of time 

after certain “qualifying event[s],” including 
termination.2 29 U.S.C. § 1161. In particular, he 

 2. Mitchell frames his ERISA claim as a claim under 
the Consolidated Omnibus Budget Reconciliation Act 
(COBRA), which amended both ERISA and the Public Health 
Services Act in similar ways and added the ERISA 
provision under which he brings suit. See Brett v. 
Jefferson Cty., 123 F.3d 1429, 1434-45 (11th Cir. 1997). 
The court refers to this claim as arising under ERISA to 
distinguish it from a potential claim under the PHSA. 
 9 
alleges that the town failed to notify him of his right 
to continued coverage in violation of 29 U.S.C. § 1166. 

As he now acknowledges, this claim cannot proceed under 
ERISA. See Response to Motion to Dismiss (doc. no. 28) 
at 9. The provisions he alleges were violated do not 
apply to “governmental plan[s],” 29 U.S.C. § 1003(b)(1), 

which include plans maintained by state subdivisions, 
29 U.S.C § 1002(32). 
 Although his ERISA claim is barred, Mitchell asks 

for the opportunity to amend his complaint to state a 
clam instead under the the Public Health Services Act 
(PHSA), which does apply to government health plans and 
which contains substantively identical notice provisions 

to ERISA. See 42 U.S.C. § 300bb-6; see also Bigelow v. 
United Healthcare of Miss., Inc., 220 F.3d 339, 344-45 
(5th Cir. 2000) (noting similarity between ERISA and PHSA 
provisions). Other courts in similar circumstances have 

simply construed ERISA claims as claims under the PHSA 
because of the parallels between the statutes. See 
Bigelow, 220 F.3d at 344. But there is an additional 

 10 
problem with Mitchell’s complaint: He purports to seek 
only damages and fees on this claim, see Amended 

Complaint (doc. no. 8) at 20, but the PHSA authorizes 
only equitable relief as a remedy against state actors 
who violate its provisions, see 42 U.S.C. § 300bb-7. The 
Eleventh Circuit has held that the PHSA does not 

authorize even attorneys’ fees incidental to equitable 
relief. See Brett v. Jefferson Cty., 123 F.3d 1429, 1435 
(11th Cir. 1997). 

 It is unclear from the facts alleged in the present 
complaint what equitable relief Mitchell might seek for 
the claimed violation of the PHSA. For this reason, the 
court will dismiss Mitchell’s ERISA claim but grant him 

leave to amend the complaint, if he so chooses, to state 
a claim under the PHSA. This leave to amend comes with 
the proviso that whatever relief he may seek under the 
PHSA cannot include either damages or fees, the only 

relief he currently requests. If he chooses to amend, 
he should state clearly what equitable relief he requests 
for the PHSA violations he alleges. 

 11 
 b. Procedural Due Process 
 As stated, Mitchell asserts a due-process claim 
against Hayneville and the four individual defendants, 
suing three in their individual capacities only and one 

(McDonald) in both her individual and official 
capacities. The four individual defendants argue that 
qualified immunity bars Mitchell’s § 1983 claims against 

them in their individual capacities for the 
procedural-due-process violation he alleges. See Br. in 
Supp. Defs.’ Motion to Dismiss (doc. no. 17) at 8-9. 
Qualified immunity “protects government officials ‘from 

liability for civil damages insofar as their conduct does 
not violate clearly established statutory or 
constitutional rights of which a reasonable person would 
have known.’” Pearson v. Callahan, 555 U.S. 223, 231 

(2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 
(1982)). Determining whether this immunity applies 
involves two distinct inquiries, which the court may 
resolve in either order: whether the plaintiff’s 

 12 
allegations “make out a violation of a constitutional 
right,” and whether “the right at issue was ‘clearly 

established’ at the time of the defendant’s alleged 
misconduct.” Id. at 232 (quoting Saucier v. Katz, 533 
U.S. 194, 201 (2001)). 
 “The basic thrust of the qualified-immunity doctrine 

is to free officials from the concerns of litigation, 
including ‘avoidance of disruptive discovery.’” Iqbal, 
556 U.S. at 685 (quoting Siegert v. Gilley, 500 U.S. 226, 

236 (1991) (Kennedy, J., concurring)). Consequently, it 
is appropriate for the district court to resolve 
qualified-immunity issues on the pleadings, before 
allowing discovery. See Pearson, 555 U.S. at 231-32. 

Qualified immunity protects officials sued for money 
damages in their individual capacities; it “does not 
shield against equitable claims.” Burrell v. Bd. of 
Trustees of Ga. Mil. Coll., 970 F.2d 785, 788 (11th Cir. 

1992). 
 In this case, the court will proceed to determine 
whether a constitutional violation occurred before 

 13 
deciding whether the right at issue was clearly 
established. There would be no benefit of judicial 

economy to postponing the constitutional question because 
defendants have also moved to dismiss Mitchell’s 
due-process claim against the town, and the town cannot 
raise qualified immunity as a defense. Owen v. City of 

Independence, 445 U.S. 622, 638 (1980); see also Pearson, 
555 U.S. at 236-37 (authorizing courts to decide the 
question of a right’s clear establishment first to avoid 

“substantial expenditure of scarce judicial resources on 
difficult questions that have no effect on the outcome 
of the case”). 

 1. Whether a Violation Occurred 
 The procedural-due-process question concerns 
Mitchell’s removal from his post at the April 2018 

council meeting.3 If he was a tenured public employee at 

 3. Mitchell also claims that he suffered 
constitutional injury because of the July meeting at 
which he was returned to administrative leave with pay 
 14 
the time of the meeting, the decision of the United States 
Supreme Court in Cleveland Board of Education v. 

Loudermill, 470 U.S. 532 (1985), has long described the 
process due before he could be terminated: “The tenured 
public employee is entitled to oral or written notice of 
the charges against him, an explanation of the employer’s 

evidence, and an opportunity to present his side of the 
story.” Id. at 546. 
 The allegations in Mitchell’s complaint indicate 

that he did not receive this process before he was removed 
from his job in April 2018. Defendants argue that what 
process Mitchell received is irrelevant because he 
(1) was an at-will rather than tenured employee by the 

time of that meeting and therefore had no property 
interest in his continued employment; (2) was not 

and the December meeting at which he was returned fully 
to his position. The court does not see how it violates 
due process to reinstate someone’s employment. As such, 
the court will focus on the April 2018 meeting and will 
consider the later meetings simply as times when Mitchell 
alleges the council failed to redress fully the claimed 
violation from the April meeting. 
 15 
deprived of any property interest because he lost only 
his accrued paid leave; and (3) cannot sue for a 

procedural-due-process violation in any case because an 
adequate post-deprivation remedy is available to him 
under state law. The court finds each of these arguments 
unavailing. 

 Mitchell remained a tenured public employee when he 
was removed from his position in April 2018. As police 
chief, he was an appointed official of the town. See 

Amended Complaint (doc. no. 8) at ¶¶ 15-16. Town councils 
may remove an appointed official only for good cause, 
such as “incompetency, malfeasance, misfeasance, or 
nonfeasance in office and for conduct detrimental to good 

order or discipline.” Ala. Code § 11-43-160(a)(2). 
Law-enforcement officers, including police chiefs, are 
also specifically entitled to a hearing before being 
suspended or terminated. See Ala. Code §§ 11-43-230 

to -231. 
 Prior to the April 2018 meeting, Mitchell had last 
been appointed by the council in 2012 to a four-year 

 16 
term, co-extensive with the terms of the councilmembers 
and mayor. See Br. in Supp. Motion to Dismiss (doc. no. 

17) at 4; see also Ala. Code § 11-43-46 (providing that 
the terms of appointed officers may not exceed that of 
the mayor). Defendants say that because Mitchell was 
appointed to a four-year term, his protected position 

expired in 2016, and he therefore no longer held 
tenure-protected public employment when the council met 
in 2018 to relieve him of his duties. In support, they 

cite an opinion of the Office of the Alabama Attorney 
General explaining that a police chief’s term of office 
“ends generally by operation of general law when a newly 
elected council takes office,” which means that “these 

persons must be reappointed at the beginning of each 
organizational meeting of a new council or as soon as 
practicable thereafter.” Municipalities - City 
Clerks - City Treasurer, No. 2013-020, Ala. Op. Att’y 

Gen., 2013 WL 226995, at *3 (Jan. 9, 2013). As such, 
they argue that the council simply decided not to 

 17 
reappoint Mitchell at the April 2018 meeting, a decision 
which would implicate no due-process protections. 

 This argument misses the issue, albeit narrowly. The 
opinion cited by defendants addressed the general length 
of police chiefs’ terms and whether it is necessary for 
them to be reappointed--that is, whether a police chief 

can simply be presumed to have obtained another four-year 
term if the council does nothing one way or another after 
reconvening. See id. at *1 (listing the questions 

answered by the opinion). It states that, in order to 
obtain an additional four-year term, a police chief or 
other town official must be reappointed after the council 
reconvenes. See id. at *3. 

 The issue in this case is different: It is whether 
Mitchell continued to have any tenure protections at all 
once the new council took office. In other words, the 
question here is whether Mitchell’s term was ended 

automatically by the reconvening of the council, or 
whether something more was necessary to cut off his 
tenure protection. 

 18 
 The attorney general’s opinion cited by defendants 
does not answer that question--it holds that Mitchell was 

not automatically entitled to another four-year term, but 
it does not address whether he otherwise retained his 
employment protections in April 2018. But § 11-43-4 of 
the Code of Alabama and opinions interpreting that 

provision do address the latter question. Under Alabama 
law, for towns and cities with a population of less than 
6,000 people,4 “[t]he clerk and such other officers 

elected by the council shall serve until their successor 
or successors are elected and qualified.” Ala. Code 
§ 11-43-4. As the Office of the Attorney General has 
explained, under § 11-43-4 a town officer whose term has 

elapsed generally becomes a “hold over” official until 
his or her successor is appointed. See City of 
Foley - Municipalities - Elections, No. 1981-119, Ala. 
Op. Att’y Gen., 1990 WL 10711756, at *2 (Sept. 23, 1990). 

This position is held as a matter of right; there is 

 4. The town of Hayneville has a population of 
approximately 1,000. 
 19 
presumed to be a “right of the incumbent to hold over,” 
which attaches to the officeholder “unless such holding 

over be expressly or impliedly prohibited.” Id. Nothing 
in the pleadings or defendants’ motion to dismiss 
indicates that the ordinances or policies of Hayneville 
prohibited town officers from performing as hold-over 

officials. For this reason, Mitchell had a right under 
state law to retain his position until his successor was 
chosen, absent good cause to fire him. 

 Although there is little case law on point, what 
exists supports this reading of the relevant statutes. 
This includes Allred v. City of Carbon Hill, No. 
6:13-cv-00930-LSC, 2014 WL 5426822 (N.D. Ala. Oct. 24, 

2014) (Coogler, J.), the case on which defendants 
principally rely. In Allred, the court found that a 
police chief’s term in office had ended because his 
successor had been appointed. See 2014 WL 5426822, at 

*1 (noting that the council had appointed a new police 
chief); see also id. at *4 (“[T]he council’s election of 
a new police chief effectively ended the term of the 

 20 
plaintiff’s service as police chief.” (quoting In re 
Potter, 354 B.R. 301, 307 (Bankr. N.D. Ala. 2006))). The 

complaint does not state that the council chose 
Mitchell’s successor when it voted to relieve him of his 
office. As such, based on the facts pleaded in the 
complaint, he was still a tenured public employee when 

the council terminated him in April 2018. 
 To seek relief for a due-process violation, Mitchell 
also must plausibly allege that he was deprived of a 

property interest. See Loudermill, 470 U.S. at 538. If 
he were suing for the loss of his job, this would be 
straightforward: Under Alabama law, as discussed above, 
Mitchell plainly had a property interest in his 

employment for the duration of his legally protected 
tenure in the position. But defendants argue that, 
because Mitchell already has his job back and is suing 
instead for the return of his paid leave benefits, there 

is no property deprivation here for which he can seek 
relief. 

 21 
 In support, defendants cite the opinion of another 
judge of this court in Ingalls v. U.S. Space and Rocket 

Center, No. 2:14-cv-699-WKW, 2015 WL 4528687 (M.D. Ala. 
July 27, 2015) (Watkins, C.J.). The Ingalls court noted 
that a number of the federal courts of appeals “have 
excluded from the Due Process Clause’s reach a public 

employer’s denials of accrued sick leave, pension 
benefits, accrued time off, and promotion rights.” Id. 
at *13 (citing Ramsey v. Bd. of Educ., 844 F.2d 1268, 

1273 (6th Cir. 1988)). Because of this, defendants say 
that Mitchell’s suit to recover his lost leave time 
cannot be founded on the Due Process Clause. See Br. in 
Supp. Motion to Dismiss (doc. no. 17) at 5. 

 Ingalls is off-point. The town council of Hayneville 
did not deny Mitchell his accrued time off at the April 
2018 meeting; it fired him. Defendants confuse the scope 
of Mitchell’s potential relief for the scope of the 

property interest at issue. While Mitchell does not have 
a claim for compensatory damages because his income never 
ceased, he still had a property interest in remaining in 

 22 
his position through the end of his tenure absent a 
finding of good cause for termination preceded by due 

process of law. 
 If the need for compensation defined the limits of 
actionable procedural-due-process rights, nominal 
damages would never be an appropriate remedy in such 

cases. The Supreme Court has expressly rejected that 
position. See Carey, 435 U.S. at 266 (“[D]enial of 
procedural due process should be actionable for nominal 

damages without proof of actual injury.”). Relieving 
Mitchell of his tenured job without process may have 
deprived him of only a nominal property interest, but it 
was a property interest nonetheless. 

 Finally, defendants argue that Mitchell’s suit is 
barred by Parratt v. Taylor, 451 U.S. 527 (1981), and its 
progeny. The United States Supreme Court held in Parratt 
that where there is “either the necessity of quick action 

by the State or the impracticality of providing any 
meaningful predeprivation process,” due process is 
satisfied if the state provides an adequate opportunity 

 23 
to remedy the harm after the deprivation occurs. 
Parratt, 451 U.S. at 539; accord McKinney v. Pate, 20 

F.3d 1550, 1562-63 (11th Cir. 1994). 
 Based on the allegations of the complaint, Parratt 
and McKinney do not apply to Mitchell’s claim. A 
prerequisite to their application is that a 

pre-deprivation hearing was “impracticable.” McKinney, 
20 F.3d at 1562. This may be true when the deprivation 
is caused by the “random and unauthorized act” of a state 

official, as in Parratt. 451 U.S. at 541. Or it may be 
true when the plaintiff notionally received a 
pre-deprivation hearing, but the hearing took place 
before such a biased decisionmaker that the plaintiff 

cannot be said to have had the possibility of genuine due 
process, as in McKinney. See 20 F.3d at 1562-63. 
 By contrast, Mitchell claims that he received no 
pre-deprivation process at all under circumstances in 

which such process was feasible. The facts alleged here 
do not show any reason to think it would have been 
impossible for the council to provide him a hearing 

 24 
before voting to terminate him in April 2018. Nor do 
Mitchell’s allegations of bias suggest that a 

pre-deprivation hearing would have been “impracticable”; 
when the ostensibly biased council finally held a hearing 
on his employment in December 2018, it voted not to 
terminate him. In the absence of any showing that the 

council could not have provided Mitchell pre-deprivation 
process, his claim comes under the general rule that 
there is no requirement for a litigant to pursue 

state-law remedies before bringing suit under § 1983. 
See Monroe v. Pape, 365 U.S. 167, 183 (1961). 

 2. The Individual Defendants 
 The four individual defendants assert that qualified 
immunity bars Mitchell’s due-process claim against them 
in their individual capacities. As discussed above, the 

qualified immunity inquiry involves two separate 
questions: whether the allegations “make out a violation 
of a constitutional right,” and whether “the right at 
issue was ‘clearly established’ at the time of the 

 25 
defendant’s alleged misconduct.” Pearson, 555 U.S. at 
232 (quoting Saucier, 533 U.S. at 201). The former 

question was difficult; the latter is concomitantly not. 
 Whether Mitchell’s due-process rights in this case 
were clearly established at the time of his April 2018 
termination can be resolved simply on the issue of his 

status as a “hold over” official. Determining that he 
was holding over in his job and that he therefore had a 
right to remain in the position until his successor was 

chosen required the resolution of an arguable question 
of state law for which the best authorities were opinions 
of the Office of the Alabama Attorney General, none of 
which squarely controlled this case. It was not 

unreasonable for the councilmembers to believe in April 
2018 that Mitchell’s term in office had ended and that 
he therefore had no procedural-due-process right to a 
hearing before they terminated him. 

 As such, Mitchell’s claims against the 
councilmembers for damages for violating his 

 26 
procedural-due-process rights are barred by qualified 
immunity and must be dismissed. 

 3. Hayneville 
 As stated, Hayneville cannot assert qualified 
immunity from Mitchell’s due-process claim. And, as 

explained above, Mitchell has asserted a viable claim, 
and thus this claim will proceed against the town. 

 c. State Law Claims 
 Finally, Hayneville, which is the only defendant sued 
on the state-law claims, moves to dismiss claims for 

breach of contract and wrongful termination. The town 
argues that Mitchell’s claims are barred because (1) he 
did not file a notice of claim prior to bringing suit; 
(2) he does not allege facts sufficient to state a 

breach-of-contract claim; (3) there exists no tort of 
wrongful termination under Alabama law, or, if such a 
tort does exist, the town is immune; and (4) the statute 
setting forth the requirements for a pre-disciplinary 

 27 
hearing for law-enforcement officers does not create a 
private right of action for damages. None of these 

arguments provide a reason to dismiss either of his 
state-law claims. 

 1. Notice of Claim 
 Hayneville offers two Alabama statutes that might 
bar Mitchell’s suit for failure to file a notice of claim. 

The first of these, Alabama Code § 11-47-192, by its 
terms applies only to claims for personal injury. See 
Ala. Code § 11-47-192 (“No recovery shall be had against 
any city or town on a claim for personal injury received” 

absent prior filing of a statement with the town clerk). 
Mitchell brings no such claim here. 
 The second, Alabama Code § 11-47-23, presents a 
closer call. Part of the statute declares that claims 

for damages “growing out of torts shall be presented 
within six months from the accrual thereof or shall be 
barred.” Ala. Code § 11-47-23. As a preliminary matter, 
this six-month provision--though it is the focus of the 

 28 
town’s briefing on this issue--does not apply to 
Mitchell’s claim for breach of contract. It is also 

largely inapposite to his wrongful-termination claim. As 
discussed previously, the gravamen of Mitchell’s 
complaint is for equitable relief. Compensatory damages 
will not be available, and he does not seek punitive 

damages on this claim. To the extent that he may seek 
nominal damages from the town for his 
wrongful-termination claim, the six-month provision of 

Alabama Code § 11-47-23 could bar that relief. 
Otherwise, it has no bearing here. 
 Alabama Code § 11-47-23 also indicates that all 
claims against municipalities other than claims for 

damages “shall be presented to the clerk for payment 
within two years from the accrual of said claim or shall 
be barred.” Id. This provision applies to both of his 
state-law claims, so while Mitchell filed his complaint 

within two years of their accrual, they may be barred if 
he was required to present them to the clerk prior to 
filing suit and failed to do so. 

 29 
 He was not so required. The Supreme Court of Alabama 
has held and reiterated that “[f]iling a lawsuit operates 

as a notice of claim” satisfying the requirements of 
§ 11-47-23. Lee v. Houser, 148 So. 3d 406, 420 (Ala. 
2013); see also Marvin W. Sumlin Constr. Co. v. City of 
Prichard, 465 So. 2d 371, 373 (Ala. 1985) (“The filing 

of a complaint has long been held sufficient claim for 
payment to satisfy the nonclaim provisions of 
§ 11-47-23.”). None of the cases the town cites 

contradict this longstanding rule; indeed, some of them 
affirm it. See, e.g., Frazier v. City of Mobile, 577 So. 
2d 439, 440 (Ala. 1991) (noting that filing an action 
within the time limits established by § 11-47-23 is 

“sufficient presentment of the claim to comply with that 
provision”). Although this rule emerges from cases 
applying the six-month limit on claims for damages under 
§ 11-47-23, the statute does not distinguish the 

presentment required in such cases from that required for 
non-damages claims, other than its allowance of six 
months for one and two years for the other. Mitchell’s 

 30 
state-law claims are not barred for failure to present 
notice prior to filing suit because under Alabama law, 

his suit operated as notice. 

 2. Breach of Contract 

 Mitchell claims that the town breached his employment 
contract by failing to follow “policies and procedures 
for progressive discipline and termination of employees” 

set forth in his employee handbook. Amended Complaint 
(doc. no. 8) at ¶¶ 139, 141. Under Alabama law, a 
breach-of-contract claim requires the plaintiff to show 
“(1) the existence of a valid contract binding the 

parties in the action, (2) [the plaintiff’s] own 
performance under the contract, (3) the defendant’s 
nonperformance, and (4) damages.” Congress Life Ins. Co. 
v. Barstow, 799 So. 2d 931, 937 (Ala. 2001). 

Notwithstanding the requirement to show damages, the 
Alabama Supreme Court has held that “an action based on 
a breach of contract will lie even where the plaintiff 
has suffered no actual damage,” in which instance the 

 31 
plaintiff “is entitled to at least nominal damages.” RLI 
Ins. Co. v. MLK Ave. Redevelopment Corp., 925 So. 2d 914, 

918 (Ala. 2005) (quoting Avis Rent A Car Sys., Inc. v. 
Heilman, 876 So. 2d 1111, 1120 (Ala. 2003)). 
 Alabama courts have recognized that the terms of an 
employee handbook can create a binding employment 

contract under certain circumstances: when the language 
of the handbook is “specific enough to constitute an 
offer,” the offer has been “communicated to the employee 

by issuance of the handbook, or otherwise,” and the 
employee has “accepted the offer by retaining employment 
after he has become generally aware of the offer.” 
Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 735 

(Ala. 1987). The town argues that Mitchell’s 
breach-of-contract claim cannot proceed because he 
provides insufficient details of the employee handbook 
and the town’s policies governing discipline and 

discharge to allege that his contract was binding. 
 The dispute over the employee handbook is misplaced. 
The cases cited by the parties rest on the default 

 32 
presumption that employment relationships in Alabama are 
at-will; these cases explain how the terms of an employee 

handbook can rebut that presumption, making a contract 
of employment binding on the parties in spite of the 
general rule that “an employee contract at will may be 
terminated by either party with or without cause or 

justification.” Id. at 728. But the relationship here 
was not one of at-will employment; Mitchell was a 
tenure-protected public employee when he was fired. As 

a result, these cases are inapposite, and Mitchell has 
plausibly pleaded that a binding contract existed 
here--indeed, state law ensures that whatever employment 
agreement existed between the parties bound the town to 

retain Mitchell absent certain pre-termination process. 
See Ala. Code § 11-43-230. The complaint also states 
that he performed his duties as police chief and that the 
town, by firing him without process, failed to perform 

its side of the bargain. See Amended Complaint (doc. no. 
8) at ¶¶ 139, 141 (stating that the handbook “set[] forth 
policies and procedures for progressive discipline and 

 33 
termination of employees” and that the town “did not 
follow” these procedures). Moreover, as explained 

earlier, the fact that Mitchell is ineligible for 
compensatory damages does not defeat his claim. See RLI 
Ins. Co., 925 So. 2d at 918. Accordingly, his 
breach-of-contract claim may proceed. 

 3. Wrongful Termination 

 Hayneville argues that the wrongful-termination 
claim must be dismissed because no tort of wrongful 
termination exists under state law. But Alabama courts 
do allow suits for wrongful termination by public 

employees fired from tenure-protected positions. See Ex 
parte Hugine, 256 So. 3d 30, 56 (Ala. 2017) (“[O]ur courts 
have stated that ‘[t]he dismissal of a public employee 
who is entitled to a pretermination hearing, without such 

a hearing, is a wrongful act constituting a tort under 
Alabama law.’” (quoting Hardric v. City of Stevenson, 843 
So. 2d 206, 210 (Ala. Civ. App. 2002))); see also 
Galbreath v. Hale Cty., 754 F. App’x 820, 828-29 (11th 

 34 
Cir. 2018) (acknowledging that a tort of wrongful 
termination exists in Alabama for public employees). The 

town’s argument on this point supplies no reason to 
dismiss Mitchell’s claim for wrongful termination. 
 Hayneville further argues that the town is immune 
from suit for wrongful termination because of Alabama 

Code § 11-47-190, which protects municipalities from 
liability for damages except those caused by “the 
neglect, carelessness, or unskillfulness” of a town 

employee. In general, this means that “a city is liable 
for negligent acts of its employees within the scope of 
their employment, but not intentional torts.” Brown v. 
City of Huntsville, 608 F.3d 724, 743 (11th Cir. 2010). 

The Supreme Court of Alabama has held, however, that when 
a nominally intentional tort is based on “a factual 
pattern that demonstrates ‘neglect, carelessness, or 
unskillfulness,’” § 11-47-190 does not immunize a 

municipality from suit. Borders v. City of Huntsville, 
875 So. 2d 1168, 1183 (Ala. 2003) (quoting Franklin v. 
City of Huntsville, 670 So. 2d 848, 852 (Ala. 1995)); see 

 35 
also Brown, 608 F.3d at 743 (recognizing this exception 
to § 11-47-190). 

 It is not wholly clear from Mitchell’s complaint 
whether the facts he alleges show deliberate wrongful 
termination or carelessness by the councilmembers as to 
whether Mitchell remained entitled to the tenure 

protections afforded by state law. Ultimately, the court 
need not resolve the matter. As discussed previously, 
compensatory damages are not available in this case. 

Mitchell does not seek punitive damages against the town 
on his wrongful-termination claim. See Amended Complaint 
(doc. no. 8) at 22. And to the extent that he seeks 
equitable remedies, § 11-47-190 presents no obstacle. 

See Ala. Code § 11-47-190 (precluding certain kinds of 
vicarious municipal liability “for damages”). 

 4. Private Right of Action 
 The town finally argues that Alabama Code 
§ 11-43-230, which describes the pre-disciplinary 
process afforded to municipal law-enforcement officers, 

 36 
does not create a private right of action for damages. 
It is unclear from the town’s briefing whether it means 

this argument to undercut Mitchell’s due-process claim 
or his wrongful-termination claim. Compare Br. in Supp. 
Motion to Dismiss (doc. no. 17) at 15 (referring to count 
II of the complaint, the procedural-due-process claim), 

with id. (“Accordingly, the Plaintiffs’ [sic] ‘wrongful 
termination’ state law claim is due to be dismissed.”). 
This confusion points to a basic problem with the town’s 

argument: Mitchell does not bring a claim under Alabama 
Code § 11-43-230. 
 To be sure, that statute is relevant to determining 
whether Mitchell was wrongfully terminated under Alabama 

tort law and whether his federal due-process rights were 
violated. But no count of his complaint is brought 
directly under § 11-43-230 for a statutory violation by 
the town or its officials. Because Mitchell does not sue 

under § 11-43-230, resolving the existence or scope of 
any private right of action that statute may create would 
be an academic exercise here. Article III does not 

 37 
empower this court to engage in such. See Chafin v. 
Chafin, 568 U.S. 165, 172 (2013). 

 d. Claims Against Cynthia McDonald 
 Mitchell brings his procedural-due-process and First 

Amendment claims against McDonald, a former member of the 
town council, in her official and individual capacities. 
Official-capacity claims are used to seek equitable 

relief against current government officials. This 
typically takes the form of a court order compelling the 
official to do something or refrain from doing something 
in their capacity as a government actor. Although 

Mitchell sues McDonald in her official capacity “as a 
member of the town council,” he concedes that she is no 
longer a member of the council. See Response to Motion 
to Dismiss (doc. no. 28) at 22. Thus, these claims must 

be dismissed because of the unavailability of any 
possible remedy. The court cannot enjoin McDonald to do 
anything or refrain from doing anything in her official 
capacity as a member of the town council because she is 

 38 
not a member of the town council. Moreover, Mitchell’s 
official capacity claims against her are redundant with 

his claims against the town. 
 The court believes that Mitchell may be confusing 
official-capacity suits for equitable relief with 
individual-capacity suits for damages, in light of the 

statement in his response brief that McDonald “is no 
longer a member of the Hayneville Town Council, so the 
only way to hold her responsible for actions that she 

took as a member of the Hayneville Town Council is to sue 
her in her official capacity.” Id. Regardless, under 
the circumstances of this case, there is no reason to 
grant Mitchell leave to substitute one of the current 

councilmembers as an official-capacity defendant to 
replace McDonald. Mitchell names the town as a defendant 
on both of his constitutional claims; bringing those same 
counts against an official-capacity defendant would be 

redundant with his claims against the town and could 
provide him no additional relief. 

 39 
 For the reasons discussed above, Mitchell’s 
due-process claim against McDonald in her individual 

capacity also is barred by qualified immunity. However, 
his First Amendment claim against McDonald in her 
individual capacity is not contested by the present 
motion and may proceed. 

 IV. CONCLUSION 

 For the reasons set forth in this opinion, the court 
will grant in part and deny in part defendants’ motion 
to dismiss. Mitchell’s ERISA claim is barred, but he may 
amend his complaint to state instead a claim under the 

PHSA if he believes that any equitable relief would be 
appropriate for the alleged violation of that statute. 
Qualified immunity bars his § 1983 suits for damages 
against the four individual councilmembers for violating 

his procedural-due-process rights. He cannot bring his 
due-process and First Amendment claims against McDonald 
in her official capacity as she is no longer a 
councilmember. His complaint proceeds now on his First 

 40 
Amendment claim against the town and all individual 
defendants in their individual capacities only, and on 

his FLSA, due-process, breach-of-contract, and 
wrongful-termination claims against the town. 

 * * * 

 Accordingly, it is ORDERED that: 
 (1) Defendants’ motion for partial dismissal (doc. 

no. 16) is granted in part and denied in part. 
 (2) Plaintiff Kelvin Mitchell’s due-process claim 
(Count II) against defendants Lula Tyson-Bailey, Justin 
Pouncey, and Sharon Reeves in their individual capacities 

is dismissed with prejudice. 
 (3) Plaintiff Mitchell’s due-process and First 
Amendment retaliation claims (Counts II & III) against 
defendant Cynthia McDonald in her official capacity, as 

well as his due-process claim against defendant McDonald 
in her individual capacity, are dismissed with prejudice. 

 41 
 (4) Plaintiff Mitchell’s claim against defendant 
Town of Hayneville for violation of the COBRA provisions 

of ERISA (Count IV) is dismissed. Plaintiff Mitchell may 
amend his complaint to restate this claim under the PHSA 
if he so chooses, bearing in mind that the PHSA does not 
authorize relief in the form of damages or fees. 

 (5) The deadline for plaintiff Mitchell to file an 
amended complaint is 5:00 p.m. on January 8, 2021. 
Plaintiff Mitchell may amend his complaint by that date 

as described above. 
 (6) Plaintiff Mitchell’s suit now proceeds on Count 
I (FLSA) against defendant Town of Hayneville; Count II 
(due-process) against defendant Town of Hayneville; Count 

III (First Amendment) against defendant Town of 
Hayneville and all four of the individual defendants 
(Tyson-Bailey, Pouncey, Reeves, and McDonald) in their 
individual capacities; and Counts V and VI (state-law 

claims) against defendant Town of Hayneville. 
 DONE, this the 18th day of December, 2020. 
 /s/ Myron H. Thompson 
 UNITED STATES DISTRICT JUDGE 
 42